The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Ann ARMSTRONG, Defendant-Appellant.

No. 81CA0354.

Colorado Court of Appeals,
Div. II.

Dec. 9, 1982.

As Modified on Denial of Rehearing
Feb. 3, 1983.

Certiorari Granted May 23, 1983.

**718**

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Joel W. Cantrick, Laura E. Udis, Asst. Attys. Gen., Denver, for plaintiff-appellee.

Gary A. Seckman, Colorado Springs, for defendant-appellant.

STERNBERG, Judge.

In a joint trial with her husband, defendant Ann Armstrong, was found guilty of conspiracy to commit aggravated robbery. She appeals and we affirm.

Defendant and her husband were indicted for conspiracy to commit aggravated robbery. Her husband was also indicted for aggravated robbery, second-degree kidnapping, and three other offenses arising out of the same events. Defendant's involvement in the scheme was allegedly based upon a telephone call placed to the manager of a personal storage warehouse, which was intended to lure him from his home directly above the storage area. Evidence of this telephone call consisted of testimony by a participant in the robbery who had been granted immunity. He testified that he heard another participant instruct defendant to place the call. The manager testified that a woman spoke to him on the telephone first, after which a man talked to him. Defendant denied placing the call and any other participation in the robbery. She testified that she was at home with her husband during the entire time and that neither had participated in the robbery.

### I.

Defendant's principal contention of error rests on the trial court's refusal to grant her motion for severance of her trial from that of her husband. The court's refusal was improper, she maintains, because of the disparity in the amount of evidence against each of them, the admissibility of prior transaction evidence against her husband that was inadmissible against her, and because their defenses became antagonistic after the trial commenced. She also argues that failure to sever prevented her attorney from commenting favorably upon her testifying without casting a negative light on her husband's failure to testify.

Defendant also points to evidence adduced at the trial of an investigator's notes revealing that in an interview with one of the victims no mention was made that there had been a woman's voice on the telephone. The defendant claims this caused their defenses to become antagonistic because her attorney was unable to argue a favorable inference from that omission without further implicating his other client, her husband. We conclude that the court's refusal to sever here was not error.

Severance is mandatory only where "there is material evidence, not relating to reputation, which is admissible against one [co-defendant] but which is not admissible against [the other] . . . [and] which is prejudicial to [the defendant as to whom it is not admissible]. . . ." Section 16–7–101, C.R.S. 1973 (1978 Repl.Vol. 8). This is not such a case. Although there was evidence which would have been inadmissible against this defendant in a separate trial, the evidence was not prejudicial to her. Thus, the question of severance was one for the discretion of the trial court. *People v. Johnson,* 192 Colo. 483, 560 P.2d 465 (1977).

In *People v. Gonzales,* 198 Colo. 450, 601 P.2d 1366 (1979), the court approved the *ABA Standards on Joinder and Severance* § 13–3.2 (1978), which offer guidelines in

the exercise of the court's discretion when severance is not mandated. The trial court is directed to consider whether, in view of the number of offenses and the complexity of the evidence, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense and as to each defendant. As further criteria, in *People v. Maestas,* 183 Colo. 378, 517 P.2d 461 (1973), the trial court was directed to consider whether evidence inadmissible against one defendant will be improperly considered despite a limiting instruction, and whether the defendant's defenses would be antagonistic. Using these guidelines, we find no abuse of discretion.

The issues and evidence were not complex. The evidence revolved around the issue of identification and was presented in the form of eyewitness accounts and documentary evidence. The evidence against each of the defendants was easily distinguished as they were involved in different stages of the scheme. Moreover, as the court noted in *Gonzales, supra,* there is a strong presumption that the jury followed the trial court's instructions on the limited admissibility of prior transaction evidence. The prior transaction evidence, which was only admissible as to her husband, could not have implicated defendant, and there is no suggestion that the evidence was so inherently prejudicial that the jury could not have limited its use to the proper purpose. Nor does the use of a general limiting instruction at the close of the evidence, rather than repeating the special limiting instruction, change this result, especially in view of counsel's failure to object.

■ Before trial, counsel specifically stated that the defenses were not antagonistic, and the evidence produced at trial showing inconsistency in the victim's statements about the phone call did not create a conflict in defenses. Defenses are not antagonistic where they do not specifically contradict each other. Where defendants merely deny participation in the crime, their defenses are harmonious. *People v. Toomer,* 43 Colo.App. 182, 604 P.2d 1180 (1979).

Additionally, although counsel refrained from commenting favorably on defendant's decision to testify as contrasted with her husband's decision not to, counsel pointed out in his closing argument that the prosecution had not impeached her credibility nor pointed out any inconsistencies in her story. Thus, we see no element of unfairness in denying defendant any favorable inferences to be drawn from her husband's silence. *Cf. People v. Warren,* 196 Colo. 75, 582 P.2d 663 (1978).

■ To establish abuse of discretion, more is required than a showing that separate trials might afford a better chance of acquittal. And, mutual participation of defendants in an offense is considered a logical basis for refusing to sever. *United States v. Petersen,* 611 F.2d 1313 (10th Cir. 1979). There being no showing of fundamental unfairness, we find no abuse of discretion.

## II.

■ In a related argument, defendant asserts the joint representation by one attorney denied her effective assistance of counsel. We find no error.

Defendant focuses her claim upon the divergent interests between her husband and herself which arose when the police officer's notes from his interview with one of the victims indicated that only a man's voice had been identified as the telephone caller, thus arousing the inference that she had not made the telephone call. Dual representation prevented counsel from arguing that her husband alone had made the call, she argues. The record does not support this claim. Defendant's attorney did, in fact, cross-examine the police officer on the accuracy of those notes and stressed all weaknesses in the evidence that it was she who placed the call.

■ Multiple representation is not per se unconstitutional. *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Where, as here, defendant's attorney does not request separate counsel, and there is no showing of actual conflict of

interest nor a claim that the trial court failed to afford defendant opportunity to demonstrate such conflict, dual representation alone does not require reversal.

In such cases, some specific instance of prejudice or real conflict of interest must be demonstrated. *People v. Romero,* 189 Colo. 526, 543 P.2d 56 (1975). This view is consistent with that expressed in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). There, the United States Supreme Court held that a defendant who raised no timely objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. In the absence of a demonstrated conflict, prejudice will not be presumed.

### III.

As other grounds of error, defendant asserts that reversal is required because the prosecution was permitted to cross-examine her on the subject of evidence which had been suppressed; that there should have been a mistrial when the existence of exculpatory evidence was revealed at trial; that it was error to refuse the tendered instruction on the weight to be accorded to testimony of an accomplice; that there was insufficient evidence of an agreement on defendant's part; and that misconduct by the prosecution during grand jury proceedings warranted dismissal of the charges.

### A.

Several guns that were found during a search of defendant's home were suppressed for use as evidence. In the course of cross-examination, however, the defendant was asked whether her husband kept guns at their home, and if so, how many and what kind. In response, she said she knew of some guns, thought there were no more than four, and did not know what kind they were.

■ Evidence which has been suppressed for use in the prosecution's case in chief is admissible for impeachment purposes. *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Jorgenson v. People,* 174 Colo. 144, 482 P.2d 962 (1971). In *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), the Supreme Court reaffirmed this holding, provided the cross-examination is reasonably related to the defendant's testimony on direct examination.

■ Here, defendant did not deny existence of the guns so she was not impeached on the issue and the guns were not placed into evidence. Where, as here, the prosecution asks general questions on the subject of the suppressed evidence without confronting the defendant with its existence and the fact that it was seized from her possession, defendant's only complaint can be on the scope of cross-examination. And, as defendant did not object to that scope here, there are no grounds to reverse.

### B.

■ Defendant requested a mistrial when a police officer testified from notes which were not provided to defense counsel prior to trial. The notes indicated that during his first interview the victim said the phone call was from a man, instead of a woman. These notes may cast doubt on the victim's later testimony that he and his wife initially spoke to a woman before a man came on the line, but the failure to provide them to counsel before trial does not warrant a mistrial.

■ Discovery of material information in the prosecution's possession is constitutionally compelled. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *People v. Smith,* 185 Colo. 369, 524 P.2d 607 (1974). Use of information obtained on discovery for impeachment is of material importance and falls within this rule. *People v. Thatcher,* 638 P.2d 760 (Colo.1982). Nonetheless, there is nothing in *Agurs, supra,* to require that such disclosure be made before trial. *United States v. McPartlin,* 595 F.2d 1321 (7th Cir.1979), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). The standard to be applied in determining if a delay in disclosure violates due process is whether the delay prevented the defendant from

receiving a fair trial. Reversal on the basis of failure to disclose the information is only mandated if the information might have affected the outcome of the trial. *Agurs, supra; Thatcher, supra.*

Defendant had already cast doubt on the accuracy of the victim's memory before the notes were revealed, and the accomplice had admitted that he did not see defendant make the call or have any other knowledge of whether she made it. To cure any prejudice resulting from untimely disclosure, the officer's testimony from the notes was stricken, their further use by the prosecution was prohibited, and defendant was given an opportunity to call the victim to cross-examine him on the inconsistencies and to cross-examine the officer on the content of his notes. In our view, this remedy adequately minimized any prejudice to defendant for any element of surprise or disadvantage suffered in her original cross-examination of the victim. *See People v. Bloom,* 195 Colo. 246, 577 P.2d 288 (1978).

## C.

Defendant tendered an instruction that the testimony of an accomplice must be viewed with suspicion. She argues that refusal to submit this instruction to the jury was error.

▋ Refusal to give such an instruction is not reversible error when a material portion of the testimony is corroborated by direct or circumstantial evidence. *People v. Martinez,* 187 Colo. 413, 531 P.2d 964 (1975). Here, there was direct evidence of corroboration in the form of testimony by the victim. In particular, the victim stated that he spoke to a woman on the telephone who identified herself as a police dispatcher. Defendant devoted a considerable amount of closing argument to the weight to be given to this testimony, and the jury was given a general instruction on credibility. Under these circumstances, failure specifically to instruct on the credibility of an accomplice was not error.

## D.

Defendant further contends that there was insufficient evidence of an agreement to commit the robbery to sustain her conviction. She argues that the evidence supports only an inference that she agreed and that this is insufficient as a matter of law. We disagree.

▋ Because direct evidence of an agreement is rarely available, a jury can properly infer the existence of the agreement or the assent necessary to establish a conspiracy from circumstantial evidence. *People v. Larson,* 194 Colo. 338, 572 P.2d 815 (1977). An agreement may be shown by circumstantial evidence which indicates that the conspirators pursue the same objective with a view toward obtaining a common goal. *People v. Cabus,* 626 P.2d 1159 (Colo.App.1980) (*cert. denied*).

▋ There was evidence defendant was present when the robbery was planned, that she was given instructions to further the plan, and that the instructions were carried out by a woman. The absence of direct evidence that she made the call is not fatal considering there was no evidence that any other woman was involved. The evidence showed she was given a telephone number and a call was made during a period of time making it unlikely that anyone else made the call. Taken as a whole, the jury could reasonably conclude that defendant pursued the same objective as the other participants, and this is sufficient to prove an agreement. *Cabus, supra.*

## E.

▋ Lastly, defendant urges us to reverse her conviction because prosecutorial misconduct before the grand jury denied her due process of law. Defendant's argument is premised on reference by the district attorney to irrelevant evidence that would be presented to the grand jury, and statements suggesting his views on the evidence. Again, we disagree.

This contention is treated in *People v. Armstrong,* 664 P.2d 713 (Colo.App.1982), in which defendant's husband's conviction

was affirmed. There, on stronger facts, we rejected a similar argument. That case is controlling here.

The judgment is affirmed.

SMITH and VAN CISE, JJ., concur.