**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Stephen D. HAMER, Defendant-Appellant.**

**No. 83CA0176.**

Colorado Court of Appeals, Div. II.

March 29, 1984.

Rehearing Denied April 26, 1984.

Certiorari Denied Nov. 5, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Kritzer & Chalat, Stuart A. Kritzer, Denver, for defendant-appellant.

BABCOCK, Judge.

Defendant, Stephen D. Hamer, seeks reversal of a judgment of conviction for criminal extortion entered upon jury verdict. We affirm.

The conviction arose out of a series of events which began while defendant and the victim were engaged to be married. During their courtship, defendant asked the victim to pose with him for sexually explicit photographs. The victim reluctantly agreed, believing that if she did not, defendant would leave her. Several months later, however, the relationship ended for other reasons.

In the summer of 1979 prior to the termination of their relationship, defendant, the victim, and her brothers entered into a business transaction. Problems arose in connection with that transaction resulting in allegations of impropriety by both sides. In December 1979, defendant telephoned the victim and threatened to expose the photographs to her employer and to her father if she were dating other men or if she spoke to the police about the business transaction. Similar threats were made in January 1980.

In January 1981, the victim was contacted by Detectives Carter and Wattles of the Denver police department. They were conducting an investigation of defendant with respect to other matters. The victim informed the detectives of the photographs and the threats made by defendant. Shortly thereafter, Detective Carter obtained a search warrant for the purpose of seizing the photographs as evidence.

The affidavit for search warrant recited that threats had been made to the victim in January 1980 and on several occasions thereafter, and that the victim had personal knowledge that defendant stored the photographs in his safe. In addition, the affidavit contained information supplied by three citizen-informants regarding the contents of the safe and its location at defendant's sister's house in Colorado Springs. The affidavit also stated that Detective Wattles had visited defendant's sister in Colorado Springs on January 21, 1981, at which time she informed him that defendant had been to Colorado Springs in late December 1980, but to her knowledge had not removed anything from the safe.

Upon this affidavit, the trial court issued a search warrant which authorized Detective Carter to execute the warrant. It directed him to search the house of defendant's sister for the purpose of, among other things not relevant here, seizing photographs contained in a metal security safe depicting the victim and defendant in sexually explicit poses.

Upon receipt of the search warrant, Detectives Carter and Wattles drove to Colorado Springs to execute it. When they arrived at defendant's sister's house, they telephoned the Colorado Springs police department to request assistance of a Colorado Springs police officer in executing the warrant. With the assistance of the local officer, the search was initiated and the safe containing the photographs was seized.

On April 2, 1982, defendant was charged with criminal extortion, § 18–3–207, C.R.S. (1978 Repl.Vol. 8), and on April 9, 1982, he pled not guilty to the charge. On August 25, 1982, the trial court offered defendant a trial date of October 4, 1982. This date was rejected by defense counsel who re-

quested a later date because of scheduling conflicts. A mutually agreed upon trial date of November 15, 1982, was then set.

On September 8, 1982, the trial court granted defense counsel's motion to withdraw because of conflict of interest. During this hearing, a discussion was had concerning whether defendant's proposed new attorney, who was representing defendant in another matter, would be willing to accept the November 15 trial date. On September 14, 1982, the court appointed this attorney. The new attorney requested that the trial date be continued because of a scheduling conflict or that the trial court appoint yet another attorney to represent defendant. The parties agreed to reconvene on September 17, 1982, to enable the trial court to arrange mutually acceptable trial dates for both pending matters. On September 17, trial was scheduled for November 22, 1982, and defense counsel thanked the trial court for its accommodation.

## I.

Defendant contends that the trial court erred in denying his motion to dismiss for failure to comply with defendant's statutory right to a speedy trial. We disagree.

▆▆▆ Section 18–1–405(6)(f), C.R.S. (1978 Repl.Vol. 8), provides that "[t]he period of any delay caused at the instance of the defendant" shall be disregarded in determining whether the six-month statutory time period has run. This subsection has been interpreted to include any delays agreed to by the defendant or requested by his attorney. *People v. Bell*, 669 P.2d 1381 (Colo.1983). Moreover, scheduling delays to accommodate defense counsel are attributable to the defendant. *People v. Bell, supra; People v. Chavez*, 650 P.2d 1310 (Colo.App.1982).

▆▆▆ Here, defendant was present at each hearing held for the purpose of scheduling trial. Each delay of trial was at the instance and request of defense counsel. Under these circumstances, the trial court properly denied defendant's motion to dismiss.

## II.

Defendant asserts that the trial court erred in denying his motion to suppress the evidence obtained pursuant to the search warrant. He argues first that the search warrant was defective on its face because Detective Carter was not authorized by law to execute warrants in the county of El Paso. In addition, defendant argues that the search warrant was not supported by probable cause. We disagree with each contention.

▆▆▆ The sanction of the exclusionary rule is designed to effectuate guarantees against deprivation of constitutional rights; therefore, evidence seized in violation of a statutory provision may be suppressed only if the unauthorized search and seizure violated constitutional restraints on unreasonable searches and seizures. *See People v. Hamilton*, 666 P.2d 152 (Colo.1983). Thus, although a search warrant must be directed to an officer authorized by law to execute it in the county where the property is located, § 16–3–305, C.R.S. (1978 Repl.Vol. 8), where the proper authorities are contacted to assist in executing a warrant directed to an officer from another county, the execution of such warrant, if the warrant is based on probable cause, does not violate a defendant's Fourth Amendment rights. *See People v. Hamilton, supra.*

▆▆▆ Here, a Colorado Springs police officer was summoned to the premises prior to the commencement of the search and supervised execution of the warrant. Therefore, the trial court's denial of defendant's motion to suppress was proper so long as the search warrant was supported by probable cause. Defendant argues, however, that the doctrine of staleness prevents the information contained in the affidavit for search warrant from constituting probable cause at the time the warrant was issued.

▆▆▆ The constitutional standard of probable cause requires that the affidavit for search warrant allege facts sufficient

to lead a person of reasonable caution to believe that contraband or evidence of criminal activity is located on the premises to be searched. *People v. Hearty,* 644 P.2d 302 (Colo.1982); *People v. Campbell,* 678 P.2d 1035 (Colo.App.1983). Although the passage of time may dilute the probability that evidence remains in the place to be searched, recent information indicating that the evidence might still be located in that place may remedy the staleness of information contained in the affidavit. *Cf. People v. Erthal,* 194 Colo. 147, 570 P.2d 534 (1977).

 Here, the affidavit contained information indicating that the photographs were in the safe two days prior to issuance and execution of the search warrant. Therefore, the information and events described in the affidavit support the conclusion that the safe contained the photographs and that the safe was present on the premises designated in the search warrant when it was issued. Consequently, the search warrant was supported by probable cause and the trial court properly denied defendant's motion to suppress.

### III.

Defendant next contends that the trial court erred in denying his motion to dismiss based on the prosecution's misconduct in failing timely to disclose information sought for impeachment purposes. Again, we disagree.

■ Although constitutional considerations compel discovery of material information in the prosecution's possession or control, disclosure of such information for impeachment is not required to be made prior to trial. *People v. Armstrong,* 664 P.2d 716 (Colo.App.1983). And, the failure to disclose that information requires reversal only if the information might have affected the outcome of the trial. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *People v. Thatcher,* 638 P.2d 760 (Colo.1982); *People v. Armstrong, supra.*

■ Here, although the information sought by defendant was produced late, the record reflects that it was forwarded to defense counsel prior to trial. The trial court offered defendant a continuance for the purpose of procuring witnesses to testify with respect to the information, but the offer was declined. Moreover, defendant has failed to show that the allegedly exculpatory information might have affected the outcome of the trial. There being no showing of prejudice, the trial court properly denied defendant's motion to dismiss.

Defendant's remaining contentions are devoid of merit.

The judgment of conviction is affirmed.

BERMAN and KELLY, JJ., concur.