STATE of Missouri, Respondent,

v.

David Lynn ELLIOTT, Appellant.

David Lynn ELLIOTT, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17417, 18074.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 14, 1993.

---

**116**

Brad B. Baker, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Saleeby, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

A jury found Appellant, David Lynn Elliott, guilty of the class C felony of receiving stolen property, § 570.080,[1] and assessed punishment at four years' imprisonment. The trial court imposed that sentence, including in the judgment a clause: "Deft is a prior offender." Appellant brings appeal 17417 from that judgment.

While appeal 17417 was pending, Appellant commenced a proceeding per Rule 29.-15[2] to vacate the judgment. The motion court entered findings of fact and conclusions of law, and denied relief without an evidentiary hearing. Appellant brings appeal 18074 from that order.

We consolidated the appeals, Rule 29.-15(*l*), but address them separately in this opinion.

### Appeal 17417

Appellant presents two points relied on: (1) the trial court erred in denying Appellant's motion "to suppress evidence and statements obtained as a result of a search warrant," and (2) the trial court wrongly found Appellant to be a prior offender. As Appellant does not challenge the sufficiency of the evidence to support the verdict, we set forth only the evidence pertinent to the assignments of error.

A Chevrolet pickup was stolen in Springfield about September 19, 1989. The Springfield Police Department investigated the theft.

On October 19, 1989, Corporal Mike Adams of the Springfield Police Department signed and verified an application for a warrant to search Appellant's property in western Greene County, outside the Springfield city limits. An associate circuit judge of the Circuit Court of Greene County issued a search warrant that date, authorizing a search of Appellant's property and seizure of the stolen vehicle and "all parts that have been removed from [it] and any tools used to remove these parts."

The next day, October 20, officers of the Missouri State Highway Patrol, deputy sheriffs of Greene County, and officers of the Springfield Police Department went to Appellant's property. What occurred was described by Sergeant Steve Ijames of the Springfield Police Department.

1. References to statutes are to RSMo 1986 except where otherwise indicated.

2. References to rules are to Missouri Rules of Criminal Procedure (1991).

Q ... when all of you arrived at the location, what happened, first?

A The county deputies, accompanied by a couple of the troopers, went to the house. When you turn ... off the roadway ... there's a drive that you can take that goes to the barn and the corrugated steel building. All of us stayed there. None of us went to the house.... We waited until they'd gone in and secured the premises, and then they came out and told us what they'd found.

Q ... did one of the county officers at that time have the actual search warrant with him?

A In his hand, correct.

Q ... Do you recall which one?

A I believe it was Anderson ... I ... imagine they wrote some reports that would have ... information ... as to who dropped it physically in front of Mr. Elliott.

....

Q ... when you first arrived, did you knock on the door of the house?

A I didn't go there. The county deputies who actually had the power to serve the warrant went to the house, and we just stood by out here until they'd contacted Mr. Elliott and then we went on up there in the woods.

In the woods, Ijames found the stolen pickup and sundry parts that had been removed from it. Nearby was a "parts list" for a cordless electric drill. Additional parts of the pickup, its license plates, and a cordless electric drill were found at other sites on Appellant's property. Ijames' testimony continued:

Q ... in a case in which a matter originates as a City of Springfield case, what is the procedure which you are required to go through in the execution of the search warrant subsequent to the beginning of the case?

A ... we have no written procedures of the case we take out into the county with our search warrant. And like in this case that originates in the City of Springfield, they will go with us, of course, and execute the warrant. But for evidence purposes, because the case is a Springfield case, they have us take custody of the evidence for processing, for disposition, for return to owners, that type of thing.

... they ... go with us and provide whatever assistance they need to provide for us to do it lawfully, but they want us to take custody of all the evidence and be responsible for it since it was our responsibility to begin with.

Consistent with that custom, Ijames wrote out an "inventory" of items taken per the search warrant. He left a copy "there at the scene." Ijames also prepared and filed a "return receipt" listing the items and confirming he took possession of them.

Appellant was charged with keeping the pickup, knowing or believing it had been stolen.

Before trial, Appellant moved to suppress as evidence all items seized pursuant to the search warrant, along with any statements "obtained directly or indirectly" from the search. After an evidentiary hearing, the trial court entered an order denying the motion. A portion of the order reads:

A more troubling question is the fact that the Search Warrant was not executed by a peace officer acting within his territorial jurisdiction. The Court determines from the evidence that the Search Warrant was in fact executed by a member of the Springfield Missouri Police Department, outside the territorial limits of his authority. See Section 542.286. However, the Court finds Greene County Deputy Sheriffs who had territorial jurisdiction at the place of the execution of the Search Warrant were present during the search. The Court also finds that the City of Springfield Police Officer executing the Search Warrant believed, in good faith, that he had authority to execute the Warrant in the manner in which it was executed. It is clear that an officer with territorial jurisdiction, such as a Greene County Deputy Sheriff, could request the City of Springfield Police Officer to assist in executing the Warrant and the presence of an officer without

territorial jurisdiction would not invalidate the search or the execution of the Warrant. Section 542.291.3, R.S.Mo. For those reasons, the Court finds the seizure under the authority of the Search Warrant by a City of Springfield Police Officer is not in violation of the Fourth Amendment, United States Constitution.

At trial, Sergeant Gary Smith of the Missouri State Highway Patrol testified he participated in the search at Appellant's property. Without objection by Appellant,[3] Smith identified State's Exhibits 3 through 8 as photographs of the stolen pickup and parts of it found in the woods.

Sergeant Ijames then took the witness stand and, like Smith, identified Exhibits 3 through 8. The prosecutor offered the exhibits in evidence, and they were received without objection by Appellant. Smith then explained, without objection, what each exhibit showed. He identified State's Exhibit 9 as the parts list for the cordless electric drill. The prosecutor offered Exhibit 9 in evidence, and it was received without objection. Ijames also identified a letter, State's Exhibit 10, which was received in evidence without objection.

■ When a pretrial motion to suppress is filed and denied, the accused must, in order to preserve the issue for appellate review, make a specific objection to the items when they are offered in evidence at trial. *State v. Yowell*, 513 S.W.2d 397, 402–03[2] (Mo. banc 1974); *State v. Matney*, 721 S.W.2d 189, 191[4] (Mo.App.1986). Obviously, admissibility of the evidence identified in the two immediately preceding paragraphs is unpreserved for review. Henceforth, in addressing Appellant's first point, we shall consider only the evidence to which the admissibility issue was preserved.

Physical evidence in the latter category is: a fuel line for a Chevrolet pickup (State's Exhibit 13); the cordless electric drill (State's Exhibit 12); a receipt evidencing purchase of acetylene by Appellant from a company that sells welding and cutting supplies (State's Exhibit 11); and the license plates from the stolen pickup (State's Exhibits 14 and 15). For convenience, we henceforth refer to the items in this paragraph, collectively, as "the challenged physical evidence."[4]

Appellant's first point relied on reads:

The trial court erred by overruling Appellant's motions to suppress evidence and statements obtained as a result of a search warrant, and subsequent objections at trial, because the State obtained said evidence and statements in violation of section 542.286, in that the law enforcement officers executing the search warrant were acting outside their territorial jurisdiction.

We begin our consideration of the point by noting Appellant does not complain that any federal or state constitutional right was violated by the search or by the seizure of the challenged physical evidence. He limits his hypothesis of error to the contention that the alleged violation of § 542.286 rendered the challenged physical evidence inadmissible. Section 542.286 reads:

1. A warrant to search a person or any movable thing may be executed in any part of the state where the person or thing is found if, subsequent to the filing of the application, the person or thing moves or is taken out of the territorial jurisdiction of the judge issuing the warrant.

2. All other search warrants shall be executed within the territorial jurisdiction of the court out of which the warrant issued and within the territorial jurisdiction of the officer executing the warrant.

Appellant reminds us the trial court found the search warrant was "executed"

---

**3.** The lawyer representing Appellant in this appeal is not the lawyer who represented him in the trial court.

**4.** It appears the lawyer who represented Appellant in the trial court intended to preserve the admissibility issue as to only the challenged physical evidence. Paragraph 2 of the motion for new trial, the only paragraph addressing admissibility of physical evidence seized pursuant to the search warrant, complained only about the challenged physical evidence.

by a Springfield police officer "outside the territorial limits of his authority." Consequently, reasons Appellant, the search and seizure were "illegal" and everything taken was inadmissible as evidence. Appellant points out § 542.296.5 reads, in part:

The motion to suppress may be based upon any one or more of the following grounds:

(1) That the search and seizure were made without warrant and without lawful authority;

. . . .

(4) That the warrant was illegally executed by the officer;

. . . .

The first of the two cases Appellant cites in support of his first point is *State v. Berkwit,* 689 S.W.2d 763 (Mo.App.1985). There, a suspect was arrested in Springfield; his automobile was towed by a towing company to its lot in Springfield. A St. Louis police officer applied to a judge of the Circuit Court of the City of St. Louis for a search warrant for the automobile. The judge issued the warrant. The Eastern District of this Court held the judge lacked authority under § 542.266, RSMo 1978, to do so, as the automobile was not within the judge's territorial jurisdiction at the time the application was made. 689 S.W.2d at 765. Consequently, the warrant was invalid, the search conducted pursuant to it was unlawful, and the fruits of the search were inadmissible. *Id.* at 765–66.

The Eastern District rejected the State's contention that the items seized should be declared admissible because the officer who made the search acted in good faith. In support of that argument, the State relied on *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). The Eastern District held those cases inapplicable because the warrant was a nullity. *Berkwit,* 689 S.W.2d at 765–66.

*Berkwit* does not aid Appellant. Unlike *Berkwit,* the warrant here was issued by a judge with territorial jurisdiction over the area searched. Nowhere in his brief does Appellant challenge the validity of the war-

rant or maintain it was flawed. He avers only that the officers who undertook to execute it lacked authority to do so.

That premise is not entirely accurate. Evidence regarding execution of the warrant, received without objection, established that when the officers arrived at Appellant's property, deputy sheriffs of Greene County went to Appellant's house and one of them displayed the warrant to him. The Springfield police officers did nothing until Appellant had been confronted by the deputies and shown the warrant.

At least one, and perhaps two, deputies accompanied Sergeant Ijames into the woods where the pickup and several of its detached parts were found. Additionally, Ijames testified: "Greene County Deputies . . . always want to initial or sign our inventories." Shown the inventory of items seized at Appellant's premises, Ijames added: "I see Deputy Sias, Deputy Harp, Deputy Anderson. And then there's two signatures—two names I can't read next to that. I can read those three. Just says Greene County S.O. witnesses below what was seized."

It is thus evident that execution of the search warrant was a hybrid operation, some steps being taken by Greene County deputy sheriffs and other activity being carried out by Springfield police officers. From a commonsense standpoint, it is readily understandable why Sergeant Ijames took custody of the items of evidentiary value. The Springfield Police Department had investigated the theft and there was nothing to gain by involving Greene County deputy sheriffs in the seizure and preservation of evidence.

Surprisingly, no Missouri appellate court has been confronted by circumstances similar to these. However, such scenarios have arisen in other states.

In *State v. Cosgrove,* 181 Conn. 562, 436 A.2d 33 (1980), officers of the Stamford Police Department witnessed marijuana in a motel room in Greenwich. They obtained a search warrant for the room and took the warrant to the Greenwich Police Department. Two Greenwich police officers were

assigned to participate in the execution of the warrant. The Stamford and Greenwich officers went to the motel, searched the room, and seized marijuana. On appeal, the occupants of the room maintained the trial court should have suppressed the marijuana in that the search warrant was executed in violation of Connecticut statutes, as it was executed by Stamford police in Greenwich, outside their jurisdiction. Rejecting that contention, the Supreme Court of Connecticut held:

> The search warrant was executed within the town of Greenwich by six police officers, four of whom were from the Stamford police department and two of whom were Greenwich police officers. The fact that Stamford officers accompanied the Greenwich policemen to the premises and participated in the search does not require that the evidence seized be suppressed. Several jurisdictions have considered similar factual situations under like statutory limitations and concluded in each instance that the executions involved were legal. The defendants have not cited us to any authority to the contrary.
>
> In *Kirby v. Beto*, 426 F.2d 258 (5th Cir.), cert. denied, 400 U.S. 919, 91 S.Ct. 181, 27 L.Ed.2d 159, four Dallas police officers accompanied by one Irving police officer served a search warrant outside the city limits of Dallas inside the city limits of Irving. The court stated that "[i]t is immaterial whether others unauthorized to execute the warrants were present and assisted." *Id.*, 260. See also *State v. Wise*, 90 N.M. 659, 661, 567 P.2d 970; *State v. Hammond*, 270 S.C. 347, 353, 242 S.E.2d 411; *Commonwealth v. Kunkel* [268 Pa.Super. 299], 408 A.2d 475, 476–77 (Pa.Super.); 68 Am. Jur.2d, Search and Seizure § 108, p. 76.

The defendants further claim the execution of the return of the search warrant by Stamford policeman Ernest Orgera voids the validity of the search and seizure. Again it should be noted that the defendants cite no authority in support of their contention in these or similar circumstances. The return and filing of the search warrant by officer Orgera

must be considered a ministerial act which did not provide a ground for voiding an otherwise valid search and negate the fact that Greenwich policemen participated in execution of the warrant. (Citations omitted.)

436 A.2d at 46–47.

Other cases with analogous facts have reached the same result. In *Gamble v. State*, 473 So.2d 1188 (Ala.Cr.App.1985), pursuant to statute a search warrant was directed to a county sheriff or any deputy. It was executed by a municipal police officer, accompanied by two deputy sheriffs and a state officer. Cocaine was seized; its admissibility was upheld. *Id.* at 1196[7].

In *People v. Hamer*, 689 P.2d 1147 (Colo. App.1984), Denver police officers obtained a search warrant and went to Colorado Springs (a different county) to execute it. A Colorado Springs officer assisted in the search; evidence was seized. The accused argued it was inadmissible because Colorado law required a search warrant to be directed to an officer authorized to execute it in the county where the property is located. Admissibility was upheld on the basis that where proper authorities are contacted to assist in executing a warrant directed to an officer from another county, the search is permissible. *Id.* at 1150[4].

*See also: Commonwealth v. Mason*, 507 Pa. 396, 490 A.2d 421, 427[5, 6] (1985).

Here, Sergeant Ijames realized the authority to execute the search warrant was vested in the Greene County deputy sheriffs. In response to a question by the trial court, Ijames testified: "Well, sir, if you mean who took the authority to actually serve the warrant, that would not have been us, that would have been a county deputy."

■ Although Ijames signed the return, it is well established in Missouri that the return to a search warrant is a ministerial act and even the total failure to file a return does not affect the validity of the warrant. *State v. Hunt*, 454 S.W.2d 555, 559–60 (Mo.1970), *cert. denied*, 400 U.S. 942, 91 S.Ct. 239, 27 L.Ed.2d 245 (1970); *State v. Mitchell*, 811 S.W.2d 809, 811[2]

(Mo.App.1991); *State v. Macke*, 594 S.W.2d 300, 309[17] (Mo.App.1980).

■ Consistent with the cases from other jurisdictions discussed above, we hold the participation by the Greene County deputy sheriffs in executing the search warrant satisfied the requirement of § 542.-286.2 that a search warrant be executed within the territorial jurisdiction of the officer executing it. In so deciding, we do not overlook *State v. Watson*, 715 S.W.2d 277 (Mo.App.1986), the other case cited by Appellant in support of his first point. It is inapposite, as there was no contention that the officers who executed the search warrant were outside their territorial jurisdiction.

Having held § 542.286.2 was satisfied, we need not decide whether "good faith" cases such as *Leon*, 468 U.S. 897, 104 S.Ct. 3405, and *Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, apply. We observe, however, that *Leon* and *Sheppard* differ from the instant case in at least two respects. First, the search warrants in those cases were flawed, i.e., unsupported by probable cause (*Leon*), and erroneously worded (*Sheppard*). Second, the accuseds in those cases claimed the evidence should be suppressed by the exclusionary rule under the Fourth Amendment to the Constitution of the United States. Neither circumstance appears in the instant case.

We hold the trial court did not err in receiving the challenged physical evidence over Appellant's objections. As the ruling was correct, it is immaterial the trial court reached it by different reasoning than us. *State v. Haynes*, 482 S.W.2d 444, 448[4] (Mo.1972).

Appellant's first point also assigns error in the receipt in evidence of "statements obtained as a result of" the search warrant. While neither the point nor the argument that follows it identifies the statements, we deduce Appellant means the statements referred to in paragraph 3 of his motion for new trial. That paragraph is the only one addressing admissibility of

incriminatory statements. It reads, in pertinent part:

The trial court erred in overruling [Appellant's] objections to witness ... Ijames' testimony that [Appellant] told him he believed that truck to be stolen or that he had removed "nuts and bolts" from the truck or that his fingerprints were "all over it"....

During the hearing on Appellant's motion to suppress, the trial court asked Appellant's lawyer whether there was "any issue .... as to whether or not the warning required by the Miranda [5] decision was given." Counsel replied, "No."

Here, Appellant's complaint about the receipt of his statements in evidence is based on the same theory as his attack on the admission of the challenged physical evidence. Having rejected his argument regarding that evidence, we likewise reject it regarding the statements. Appellant's first point is denied.

His second point reads:

The trial court erred in finding Appellant to be a prior offender, because the evidence was insufficient to establish that Appellant pleaded guilty to, or was found guilty of a previous felony, and the trial court lacked jurisdiction under section 558.021, to sentence Appellant as a prior offender and denied Appellant his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Missouri Constitution, in that Appellant was not charged as a prior offender, no evidence was presented and no formal finding was made, beyond a reasonable doubt, as to Appellant's prior offender status.

Section 558.021, cited in the above point, reads, in pertinent part:

1. The court shall find the defendant to be a prior offender ... if

(1) The ... information ... pleads all essential facts warranting a finding that the defendant is a prior offender ... and

(2) Evidence is introduced that establishes sufficient facts pleaded to warrant

---

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

a finding beyond a reasonable doubt that the defendant is a prior offender ... and

(3) The court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a prior offender....

2. In a jury trial, the facts shall be pleaded, established and found prior to submission to the jury outside of their hearing....

. . . .

4. The defendant shall be accorded full rights of confrontation and cross-examination, with the opportunity to present evidence, at such hearings.

. . . .

Here, the information pled no facts warranting a finding Appellant is a prior offender.[6] At no time prior to submission of the case to the jury did the prosecutor offer any evidence suggesting Appellant had pled guilty to, or been found guilty of, any felony. Appellant testified, but was not asked about any convictions. The trial court made no findings of fact as to any felony conviction. The verdict-directing instruction tendered by the State submitted both the issue of guilt and the issue of punishment to the jury. As reported in the first sentence of this opinion, the verdict addressed both issues.

Thirty-six days after trial, following the denial of Appellant's motion for new trial, the trial court held a sentencing hearing. Commenting on a presentence investigation report,[7] the prosecutor narrated:

[Appellant] has two prior convictions for driving while intoxicated, plus he was arrested back on August 27th of 1989 for tampering in Wright County and pled guilty on October 11th of '90.

A remark by Appellant's lawyer indicated Appellant was on probation and had been under supervision "several months." The comment yielded no other details.

The trial court imposed the jury-assessed sentence of four years, denied probation, and committed Appellant to the Depart-

ment of Corrections. Nothing was said by anyone indicating Appellant would be declared a prior offender in the judgment, and no hint of it appears in the docket entry. The first, and only, mention of "prior offender" in the record furnished us is found in the judgment itself. As noted in the second sentence of this opinion, a line in the judgment reads: "Deft is a prior offender."

Appellant asserts this harms him because, in his words:

Under the provisions of Section 558.-019, RSMo Cum.Supp.1989, appellant must serve a minimum of 40% of his sentence before he is eligible for parole, conditional release or any other early release by the Department of Corrections, if he is classified as a prior offender.

Appellant misreads the statute. Section 558.019, RSMo Cum.Supp.1990, reads, in pertinent part:

1. . . . .

2. The provisions of this section shall be applicable only to Class A and B felonies ... and dangerous felonies as defined in subdivision (8) of section 556.061, RSMo. ...

As explained in the first sentence of this opinion, the conviction here is for a class C felony, and it is not a dangerous felony as defined in § 556.061(8), RSMo Cum.Supp. 1990. Therefore, by its own terms § 558.-019 does not apply. *See:* MACH–CR 2.30 [1992 Revision] 10–1–92, 1. PRIOR OFFENDERS, p. 2–7, and Notes on Use, pp. 2–15 through 2–19.

However, the "prior offender" label may harm Appellant another way. His first amended motion in the Rule 29.15 proceeding (prepared by a lawyer other than the one who represented him in the trial court and other than the one representing him in these appeals) avers:

6. Section 558.016.2, RSMo Cum.Supp.1990, reads: "A 'prior offender' is one who has pleaded guilty to or has been found guilty of one felony."

7. The report has not been filed with us.

... there is a reasonable probability [Appellant] may be prejudiced as to his eligability [sic] to be released on probation or parole, because the prior offender status will affect [his] classification with the Department of Corrections.

Because of this averment, we are unwilling to assume the "prior offender" label is nonprejudicial. We shall therefore address point two on the merits.

The State insists point two is unpreserved for review because Appellant "made no objection to the court's finding of prior offender status, nor was it an issue in [A]ppellant's motion for new trial."

That assertion is accurate, but unpersuasive. Appellant had no opportunity to object to the finding, as (so far as we can determine) it first appeared in the judgment, presumably prepared and signed after the sentencing hearing. Appellant's timely motion for new trial was filed 15 days before the judgment was entered. Unless Appellant's lawyer could foresee the future, he would not have known, when he filed the motion, that the "persistent offender" clause would appear in the judgment.

■ Despite arguing the second point is unpreserved, the State says, in its brief:

[The State] concedes that the cause should be remanded for the limited purpose of permitting the State to amend the information and to conduct a hearing to determine Appellant's status as a prior offender in that the Appellant was not charged as a prior offender, but the State adduced evidence of [his] prior offender status and the trial court found [him] to be a prior offender.

In proclaiming the prosecutor adduced evidence of Appellant's "prior offender status," the State exaggerates the record. The prosecutor presented no evidence establishing any felony conviction. The only "evidence" cited in the argument portion of the State's brief consists of the comments by the prosecutor and Appellant's lawyer

at the sentencing hearing, recounted *supra*. The two convictions for driving while intoxicated could have been misdemeanors, § 577.010; § 577.023, RSMo Cum.Supp. 1992, as could the tampering conviction. § 569.090; §§ 569.095–.099, RSMo Cum. Supp.1992.

Appellant protests it would be error to remand this case for the purposes outlined by the State. Appellant points out the prosecutor never manifested any intent to invoke the prior offender provisions, §§ 558.016 and 558.019, RSMo Cum.Supp. 1990.[8] Additionally, Appellant emphasizes no evidence was presented warranting a finding beyond a reasonable doubt that he is a prior offender, and no such finding was made anytime in his presence. Appellant asserts, and the record fully supports, he was never "put on notice that he was facing this charge as a repeat offender."

The cases cited by the State in which Missouri appellate courts have remanded to allow cleanup of messes in prior, persistent, or dangerous offender procedures have three characteristics missing from the instant case. First, in the cited cases the prosecutor made an effort to invoke prior, persistent, or dangerous offender procedures. Second, in the cited cases the trial courts conducted the trials in accordance with such procedures by not submitting the issue of punishment to the jury. Third, in the cited cases the accused had reason to know the prosecutor intended to invoke such procedures.

Here, the prosecutor never attempted to invoke prior offender procedures. Even during the sentencing hearing, after noting Appellant's prior convictions, the prosecutor made no request that the trial court apply §§ 558.016 or 558.019, RSMo Cum. Supp.1990. He asked only that the trial court deny probation and impose the sentence the jury assessed.

In *State v. Street*, 735 S.W.2d 371 (Mo. App.1987), the prosecutor proved the accused had three earlier felony convictions, the trial court found the accused a prior

---

8. §§ 558.016 and 558.019 serve different purposes. *See: State v. LaRue*, 811 S.W.2d 40, 45–48 (Mo.App.1991).

and persistent offender, and the issue of punishment was not submitted to the jury. However, the information contained no prior or persistent. offender allegations. The Western District of this Court reversed the imposition of sentence and remanded the case for resentencing if, upon amendment of the information and rehearing, the trial court's findings supported sentencing as a prior and persistent offender. *Id.* at 374. Absent such findings, the accused would receive a new trial. *Id.* The opinion aptly observed:

> The statute is abundantly clear that an extended sentence term may be imposed if, but only if, " * * * the ... information ... pleads all essential facts warranting a finding that the defendant is a prior offender, persistent offender, or dangerous offender * * *." It is not enough for the state to simply announce an intention to seek an extended sentence, the charge must set out the facts which would, if later substantiated by the proof, warrant the court in making the findings which are also a requirement of the statute. *If the courts continue to indulge the laxity which has characterized so many cases of extended term sentencing, a judicial emasculation of the legislative direction will be the accepted procedural norm.* (Emphasis added.)

735 S.W.2d at 373.

If the statutes are to escape total judicial nullification, a line must be drawn somewhere. This case is it.

The General Assembly crafted a practical, orderly, and easily understood procedure to prosecute an accused as a prior offender. The matter is to be resolved before submission of the case to the jury, enabling counsel and the trial court to know whether the jury will be instructed to assess punishment. Resolution of prior offender issues during trial enables the accused to preserve any alleged error regarding them in his motion for new trial. To flout the statutes by remanding in the circumstances here requires more judicial arrogance than we possess. The State's request to remand is denied.

Exercising our power under Rule 30.23 to "dispose finally of the case," we strike from the judgment the clause: "Deft is a prior offender." As thus corrected, the judgment is affirmed.

#### Appeal 18074

Appellant's only complaint in this appeal is that his lawyer in the trial court failed to object to the "prior offender" clause in the judgment, and the motion court erred by failing to find this constituted ineffective assistance of counsel.

Because of our disposition of appeal 17417, this assignment of error is moot.

· The order of the motion court is affirmed.

PARRISH, C.J., and SHRUM, J., concur.