The PEOPLE of the State of Colorado, Plaintiff/Appellant,

v.

Gary MARTINEZ, Defendant/Appellee.

No. 94SA451.

Supreme Court of Colorado, En Banc.

June 19, 1995.

---

Robert R. Gallager, Jr., Dist. Atty., James C. Sell, Chief Deputy Dist. Atty., Michael Spear, Deputy Dist. Atty., Englewood, for plaintiff/appellant.

Lozow & Lozow, P.C., Bradley A. Lozow, Denver, for defendant/appellee.

Chief Justice ROVIRA delivered the Opinion of the Court.

The People filed this interlocutory appeal requesting reversal of an order suppressing evidence obtained pursuant to a search warrant executed by police officers outside of their jurisdiction. The People argue that the error in the warrant's execution did not rise to the level of a constitutional violation requiring suppression of the evidence. We agree and reverse the district court's ruling.

I

The facts are undisputed. On January 27, 1993, Denver police officers obtained a warrant authorizing the search of a house located at 2371 West Vassar Avenue, in the City and County of Denver, Colorado, for evidence of controlled substances. The warrant was supported by an affidavit alleging that the defendant, Gary Martinez (Martinez) possessed and distributed cocaine from that residence. Denver police executed the warrant and seized cocaine, weapons and cash

from the house. As a result, Martinez was arrested and charged with unlawful possession with intent to distribute a controlled substance, and one mandatory sentencing count of possession with intent to distribute twenty-eight grams or more of cocaine.

Shortly after the arrest, the Denver police determined that the house lies outside of Denver County, and is in fact, located in Arapahoe County, in the City of Englewood.[1] After discovering their error, the Denver officers promptly contacted the South Metro Drug Task Force and transferred the evidence to that agency. All further proceedings have been conducted by Arapahoe County officers.

Martinez moved ·to suppress the evidence, claiming that the warrant was not valid on its face, and that the Denver officers acted without jurisdiction in its execution. At a hearing the People admitted that the Denver officers executed the warrant outside of their jurisdiction, in violation of section 16–3–305(1), 8A C.R.S. (1986). The People argued that even though there was a statutory violation, the search did not violate constitutional guarantees that individuals be free from unreasonable searches, and therefore exclusion of the evidence was not required. Relying on *People v. Hamer*, 689 P.2d 1147 (Colo. App.1984), *cert. denied*, No. 84SC1999 (Nov.

5, 1984), the trial court held that the officers' failure to contact local authorities to assist in executing the warrant required suppression of the evidence.

## II

Both the United States and the Colorado Constitution protect citizens from unreasonable searches and seizures.[2] Though both constitutions require that a warrant issue only upon a showing of probable cause, supported by oath or affirmation, neither constitution prescribes the manner in which a search warrant must be executed. The General Assembly has adopted statutes to effect these constitutional protections.

Martinez did not argue that the officers failed to appear before a judge with a sworn affidavit.[3] Rather, he attacked the warrant on its face, based on the error in its legal description. Moreover, he contended that the error in description resulted in the warrant's illegal execution. We will first consider the error in the legal description, and then examine the relationship between the statutory requirements for warrant execution and the constitutional protection against unreasonable searches and seizures.

## A

■■■ Identification of the premises to be searched is a constitutional requirement.

---

1.  Detective Salazar of the Denver Police Department testified that the house is located approximately one-half block, or about four houses outside of the Denver city limits. He stated "[y]ou can walk from the location where we executed the search warrant within 15 seconds to be within the City and County of Denver." The defendant does not dispute that the house was located close to the boundary between the two cities.

2.  Article II, section 7 of the Colorado Constitution provides:
    The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.
    Colo. Const. art. II, § 7.
    Amendment IV to the United States Constitution provides:
    The right to the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.
U.S. Const. amend. IV.

3.  Section 16–3–301(1), 8A C.R.S. (1986), provides that "[a] search warrant authorized by this section may be issued by any judge of a court of record." Though no question exists regarding the judge's authority to issue the warrant, in his motion to suppress Martinez contended that the warrant was defective because it was based on hearsay information obtained from a confidential informant. The parties did not argue this issue at the trial level, and the suppression order is not based on the absence of probable cause. Though we note that properly corroborated hearsay statements from a reliable confidential informant can be used to support the issuance of a warrant, *see People v. Turcotte–Schaeffer*, 843 P.2d 658, 660–62 (Colo.1993), this matter is not now before this court.

This mandate has been incorporated into both our criminal statutes and rules of procedure which provide that every warrant must "identify or describe as nearly as may be, the premises, person, place or thing to be searched." § 16–3–304(1)(a), 8A C.R.S. (1986); *see also* Crim.P. 41(d)(1)(I). When considering errors in a warrant, we have held that the test for determining the adequacy of the description is one of practical accuracy. *E.g., People v. Ragulsky,* 184 Colo. 86, 518 P.2d 286 (1974); *see also Zawacki v. City of Colorado Springs,* 759 F.Supp. 655 (D.Colo. 1991). Under this standard the description must be sufficient for the executing officer, with reasonable effort, to ascertain and identify the place intended to be searched. *Ragulsky,* 184 Colo. at 89, 518 P.2d at 287; *see Steele v. United States,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925) (same); 2 Wayne R. LaFave, *Search and Seizure, a Treatise on the Fourth Amendment,* § 4.5(a) at 208 (2d ed. 1987). Here, though the legal description was in error, it was sufficient for the officers to identify the house to be searched, and did not contain any flaw that would cause officers to search a house other than that intended. Thus, though the warrant did not comply with the literal terms of Crim.P. 41(c)(1), such noncompliance was not the equivalent of a constitutional violation. *See People v. McKinstry,* 843 P.2d 18, 23 (Colo.1993); *People v. Fournier,* 793 P.2d 1176, 1179 (Colo. 1990).

## B

Had the improper legal description been the sole error, our inquiry would end. However, Martinez also questioned the Denver officers' authority to execute a search warrant outside of Denver. Section 16–3–305(1), 8A C.R.S. (1986), states that "[e]xcept as otherwise provided in this section, a search warrant shall be directed to any officer authorized by law to execute it in the county wherein the property is located."

The trial court concluded suppression of the evidence was the proper remedy for the officers' error based on its reading of *People v. Hamer,* 689 P.2d 1147 (Colo.App.1984). In *Hamer,* the court held that no constitutional violation occurred when Denver police officers executed a search warrant in Colorado Springs because Colorado Springs police officers supervised execution of the warrant. *Hamer,* 689 P.2d at 1150. From this decision the trial court extrapolated the inverse rule that an extra-jurisdictional search without accompanying local authorities requires application of the exclusionary rule.[4] However, when considering police conduct we have stated that the "facts with respect to the reasons for and nature of extraterritorial actions of police officers are highly important in determining whether suppression of evidence is required when police officers make arrests outside the boundaries of their jurisdictions." *People v. Vigil,* 729 P.2d 360, 367 (Colo.1986). Here, the trial court failed to consider whether the statutory violation resulted in a corresponding infringement upon Martinez' constitutional rights in view of all the attendant facts and circumstances. *Cf. People v. Weston,* 869 P.2d 1293, 1298 (Colo. 1994).

We have often held that a statutory or criminal rule violation by itself does not mandate invocation of the exclusionary rule. *See, e.g., People v. Fournier,* 793 P.2d 1176 (Colo.1990) (affidavit sworn before clerk of the court in violation of Crim.P. 41(c)(1) did not trigger exclusionary rule); *People v. Hamilton,* 666 P.2d 152 (Colo.1983) (extra-jurisdictional arrest by officer acting under the authority of an arrest warrant does not require exclusion of the evidence seized). "The sanction of the exclusionary rule is designed to effectuate guarantees against deprivation of *constitutional* rights." *McKinstry,* 843 P.2d at 20 (quoting *Hamilton,* 666 P.2d at 156); *see also Fournier,* 793 P.2d at 1179 (Where "a law enforcement officer obtains evidence in violation of a statute or regulation, the exclusionary rule is not trig-

---

4. The sole basis for the trial court's ruling was improper execution of the warrant:

> I'm going to grant this motion to suppress, essentially based on People versus Hamer.... [I]t appears to me that in that decision and in

that language, the Court specifically ruled the reverse. That is, that if there was no such authorized officer to assist from the appropriate county or location it would be violative.

gered unless the unauthorized conduct also amounts to a constitutional violation."); *People v. Hamer*, 689 P.2d 1147, 1150 (Colo.App. 1984), *cert. denied*, No. 84SC1999 (Nov. 5, 1984).

Our past decisions have been influenced by the purpose underlying jurisdictional limitations on police conduct, and the rationale for imposing the exclusionary rule. In *Hamilton*, we stated that imposing a jurisdictional limit on an officer's authority to execute an arrest "recognizes that in many situations citizens of a particular community may best be served by the requirement that local officers familiar with local neighborhoods accompany peace officers from other jurisdictions seeking to arrest a defendant allegedly present in the community." *Hamilton*, 666 P.2d at 156. We also concluded that exclusion was not the appropriate remedy even though the Golden officers acted without jurisdiction when they arrested the defendant in Denver. There we noted that Denver authorities were ultimately contacted, and that the defendant was taken to a Denver jail. We held, therefore, that the arrest was "not so unreasonable as to violate defendant's constitutional protection against unreasonable searches and seizures." *Id.* at 157.

■ Jurisdictional limits on the execution of a search warrant, similar to limits on arrest jurisdiction, ensure that a search will be conducted by officers familiar with the area. However, just as every extra-jurisdictional arrest does not rise to the level of a constitutional violation, not all extra-jurisdictional searches violate constitutional protections. In this case we conclude that the search did not violate Martinez' constitutional rights.

Here, the Denver officers were unaware they were acting outside of their jurisdiction.

Indeed, the house searched was very close to the Denver City limits, in an area where the city boundaries are not clearly defined. The court received testimony that officers from Denver, Sheridan and Aurora often overlap in their patrol of this area. Thus, the trial court concluded that the officers' mistake was not intentional.[5]

Further, there was no suggestion that the Denver officers were unfamiliar with the neighborhood. In fact, the Denver officers were authorized to enforce laws within one-half block, reducing the risk typically associated with extraterritorial execution of a warrant. We also note that the officers sought a warrant before entering the house even though there was at least some evidence of exigency.[6] After realizing their mistake, the officers promptly notified the proper authorities. We cannot conclude that the search here would have been handled differently, or would have been more reasonable, if additional local officers were present.

■ Despite these facts, Martinez argues that exclusion of the evidence is appropriate to deter officers from conducting searches outside of their jurisdiction. In support of his contention he points out that the officers had several methods available to check the legal description before executing the warrant. While it is true that the primary justification for the exclusionary rule is deterrence, the rule is not directed at all police conduct, but rather at that conduct identifiable as unconstitutional. *See People v. Wolf*, 635 P.2d 213, 217 (Colo.1981) (citing *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974)). Martinez' argument fails based on our determination that the officers' conduct did not

---

5. The court stated that it did "not find[ ] that the error was intentional in any way. I think it was unintentional." In *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), the Supreme Court considered an execution error involving a warrant that ambiguously described the place to be searched. There, the Court decided that suppression was not the proper remedy for the officers' error finding that their "failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Id.* at 88, 107 S.Ct. at 1018. Based on the facts

here we conclude that the officers' mistake was objectively understandable and reasonable.

6. At the hearing a Denver officer testified that they moved quickly after receiving information sufficient to sustain a warrant because drugs were involved. Though we do not suggest, nor did the People argue, that an exception to the warrant requirement applies here, we recognize that certain time pressures were present in this case.

violate his constitutional rights.[7]

Finally, this case is distinguishable from those instances where a search would be invalid from its inception because the officers had no probable cause. We considered this distinction in *People v. Fournier,* 793 P.2d 1176 (Colo.1990), where we reversed a suppression order based on a violation of the rules of criminal procedure. In *Fournier,* we found that the record was devoid of any evidence that the defendant was subjected to a "search that would not have occurred at all, or that the search would have been carried out in a substantially different manner" absent the rule violation. *Fournier,* 793 P.2d at 1180. Here, the sole basis for the trial court's ruling was violation of the statute. However, there is no evidence that the house would not have been searched, or that the search would have been carried out in a substantially different manner if local officers were present.

In holding that suppression is not the appropriate remedy in this case, we do not suggest that officers are free to execute warrants outside of their jurisdiction without consequence. We echo our sentiments contained in *People v. Wolf,* 635 P.2d 213, 217 (Colo.1981), where, though we declined to impose the remedy of exclusion when Denver officers executed an arrest warrant in Adams county, we cautioned that "this court cannot sanction willful and recurrent violations of the law" and warned that future violations "may trigger application of the rule." *Id.*

### III

In summary, we conclude that the Denver officers' execution of a search warrant on a house located one-half block outside of their jurisdiction, while in violation of statutory prescriptions, did not rise to the level of a constitutional violation. We therefore reverse the trial court's order suppressing the

evidence and remand this case for further proceedings.

---

7. When considering whether an error in securing or executing a warrant mandates exclusion courts often consider whether the error is substantially related to the constitutional requirements. *See* 1 LaFave, *Search and Seizure, supra* § 1.5, at 105 ("[P]rovisions to the effect that the warrant must ... be executed by an officer who is within his territorial jurisdiction, ... are not generally viewed as being important enough to merit enforcement through the exclusionary rule.").