IN THE SUPREME COURT OF TENNESSEE

AT JACKSON


| STATE OF TENNESSEE | ) | FOR PUBLICATION |
| | ) | |
| | ) | FILED: NOVEMBER 6, 1995 |
| Appellee | ) | |
| | ) | HENRY COUNTY |
| VS. | ) | |
| | ) | HON. JULIAN P. GUINN, |
| GREGORY ADAMS VALENTINE | ) | JUDGE |
| | ) | |
| Appellant | ) | NO. 02-S-01-9410-CC-00070 |

FILED

**November 6, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

For Appellant:

W. Jeffery Fagan
Camden, TN

For Appellee:

Charles W. Burson
Attorney General and Reporter

Eugene J. Honea
Assistant Attorney General
Nashville, TN

G. Robert Radford
District Attorney General

Vicki S. Snyder
Assistant District Attorney
Huntingdon, TN

OPINION

CONVICTIONS REVERSED AND INDICTMENT DISMISSED          BIRCH, J.

Gregory Adams Valentine was convicted by a jury of unlawful possession of a Schedule VI substance with intent to manufacture, deliver, or sell (a Class E felony) and unlawful possession of drug paraphernalia (a Class A misdemeanor).[1] We granted his application for review pursuant to Rule 11, Tenn. R. Crim. P., in order to determine whether his testimony fulfilled the requirements of Rule 41(g), Tenn. R. Crim. P., thereby preserving his right to challenge, on appeal, the admission of illegally obtained evidence.

For the reasons herein stated, we find that Valentine met the requirements of Rule 41(g) and is, therefore, entitled to persist, on appeal, in his challenge to the admission of such evidence. Further, Valentine here insists that the convicting evidence introduced against him was insufficient to support the convictions. We agree and find that the legally gathered evidence is, indeed, insufficient to support the convictions. Accordingly, the convictions are reversed, and the indictment is dismissed.

I

The record indicates that on December 27, 1991, the 24th Judicial District Task Force sent a confidential informant wearing a concealed recording device to conduct a drug transaction with Valentine. The effort was successful; Valentine sold a quantity of

---

[1]Tenn. Code Ann. § 39-17-417(a).

marijuana to the informant. As a result of the purchase, Henry County Deputy Sheriff Stephen Page submitted an affidavit to a magistrate supporting his application for the issuance of a warrant to search Valentine's Springhill Road residence, including "all the buildings, vehicles and outhouses" on the property. The affidavit stated:

> The affiant's belief is based upon information which he has received from a reputable and reliable person, whose name and identity has been disclosed to the undersigned Judge of Henry County, Tennessee, [the magistrate signed his name here] which said information is as follows: a confidential informant who knows what marihuana looks like and who has bought marihuana from Valentine at the above location and has seen cocaine at the above location and knows that Valentine has had said marihuana and cocaine at the above location within the last 5 days.

The magistrate issued the warrant. Discovered and seized in the search were approximately thirty-seven marijuana plants growing in the attic of a building located behind Valentine's residence. Officers also found planters, fertilizer for the plants, utensils for watering the plants, and a lighting system that included a device for transversing the lights to equalize exposure upon each plant. Along with the plants and equipment, officers seized several photographs of marijuana crops Valentine

4

had grown over the years. The director of the task force videotaped the search.

II

Valentine filed a pretrial motion to suppress the seized evidence. He alleged that Page's affidavit did "not reflect an adequate basis for the 'reliability' of the confidential informant and [did] not contain sufficient information as to how the confidential informant knew the defendant had marijuana and cocaine at the address to be searched." The trial court denied the motion without making findings of fact or conclusions of law.

In a jury trial on November 19, 1992, the State presented evidence of the purchase, the application for the search warrant, the search, the location of the marijuana, the plants, the photographs, a videotape, and miscellaneous drug paraphernalia. Valentine persisted in his objection to the evidence; ultimately, he testified in his own defense. As stated, the jury found him guilty of the Class E felony of possession of marijuana with intent to manufacture, deliver, or sell and the Class A misdemeanor of unlawful possession of drug paraphernalia.

On appeal to the intermediate court Valentine raised four issues. He relied principally upon his contention that the trial court erred in refusing to suppress the evidence seized pursuant to

5

one of the two search warrants issued.[2]  Addressing this issue, the appellate court found that the questioned evidence had, indeed, been illegally obtained and that the trial court was in error for having refused to suppress it.  This finding notwithstanding, the court concluded that Valentine had waived this issue by having failed, in his testimony at trial, to give the seized evidence an "innocent or mitigating cast."  This "cast" is required in order for a defendant to preserve the right to object to the admissibility of the evidence.  Tenn. R. Crim. P. 41(g).  Finding the evidence of guilt sufficient, the intermediate court affirmed the convictions.

III

In order for a search warrant to meet constitutional requirements under Article I, Section 7, of the Tennessee Constitution, the warrant must comply with the two-pronged standard voiced in  Aquilar v. Texas[3] and Spinelli v. United States.[4]  State

---

[2]Two search warrants were issued in this case.  The second one authorized a search of  a duplex owned by Valentine, located at 203 and 203B Lydia Street, Paris, Henry County, Tennessee.  Valentine filed a motion to suppress the evidence seized under both search warrants.  As to the second warrant, here described, the trial judge granted the motion on the grounds that there was no showing of the basis for reliability and an incorrect description of the place to be searched.  The affidavit in support of the second search warrant used the same language regarding the informant as the first search warrant now on appeal.

[3]378 U.S. 108 (1964).

[4]393 U.S. 401 (1969).

6

v. Jacumin, 778 S.W.2d 430 (Tenn. 1989). The two prongs of the Aguilar-Spinelli test are usually referred to as the "basis of knowledge" prong and the "veracity" prong. The United States Supreme Court described the test as follows:

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was "credible" or his information "reliable." Otherwise, "the inferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead, by a police officer "engaged in the often competitive enterprise of ferreting out crime," or, as in this case, by an unidentified informant.

Aguilar, 378 U.S. at 114-15 (citations omitted).

As found by the Court of Criminal Appeals, the language "who knows what marihuana looks like and who has bought marihuana from Valentine at the above location and has seen cocaine at the above location" is sufficient to satisfy the "basis of knowledge" prong of Jacumin. State v. Moon, 841 S.W.2d 336, 339 (Tenn. Crim. App. 1992)(holding that the "basis of knowledge" prong was satisfied by the language "informant . . . had personally seen marijuana being used and/or distributed").

7

The affidavit, however, fails to satisfy the "veracity" prong of <u>Jacumin</u>.  It referred to the informant as "a reputable and reliable person."  This conclusory statement provided no facts upon which "the magistrate [could] determine either the inherent credibility of the informant or the reliability of his information on the particular occasion."  <u>Moon</u>, 841 S.W.2d at 338 (citations omitted).

Thus, the affidavit failed to satisfy the constitutional requirements of Article 1, Section 7, of the Tennessee Constitution.  We must find that the search warrant was improvidently issued by the magistrate.  Accordingly, we agree with the intermediate court's view that the trial court erred in its refusal to grant Valentine's motion to suppress the evidence seized under the search warrant.

Even though the trial court erred in permitting the illegally obtained evidence to be introduced against Valentine, his standing to raise the issue on appeal depends upon his compliance with Rule 41(g), which provides:

> If inadmissible evidence obtained by an illegal search or seizure is erroneously permitted to be introduced against a defendant, *and if the defendant subsequently testifies as to the same evidence but gives it an innocent or mitigating cast as to the charge against him and denies the charge, such testimony of the defendant*

8

> *shall not be deemed to be a waiver*
> *of his right to object to the*
> *admissibility of such evidence.*

Tenn. R. Crim. P. 41(g) (emphasis added).

Valentine insists that he complied with the requirements of Rule 41(g); consequently, we begin with an examination of the rationale for the Rule.  The Comments of the Advisory Commission indicate that "[t]he provision of subsection (g) is designed to change the rule of Lester v. State, 216 Tenn. 615, 393 S.W.2d 288 (1975)[sic], which often caused a defendant to waive one [constitutional] right by exercising another."  Tenn. R. Crim. P. 41 (Advisory Commission Comments).

In Lester v. State,[5] a male assailant followed a woman to her home, where he beat her, cut her, and attempted to abduct her. During the struggle, she pulled several buttons from the sleeve of his coat.  The investigation led authorities to Lester.  They went to his residence without a warrant in an attempt to match the buttons recovered at the scene with those on one of his coats. Although Lester was not home when the police arrived, they were admitted by his wife.  She complied with their request to produce one of Lester's coats for their examination.  They seized the coat. Testifying at trial, Lester admitted ownership of the coat, but he explained that the buttons had been lost long before the assault in question.

_____

[5]393 S.W.2d 288 (1965), *cert. denied*, 383 U.S. 952 (1966).

9

The primary issue addressed by the Court in <u>Lester</u> was whether the wife's consent to search the marital residence foreclosed the husband from objecting to the admission of certain of his personal property seized. Ancillary perhaps to <u>Lester</u>, but of profound pertinence here, is a consideration of the dilemma Lester confronted--that is, preserving his standing to object to the admission of the coat on the grounds that it was illegally seized while contemporaneously admitting ownership of the coat and attempting to destroy its probative value as incriminating evidence against him.

The Court addressed this dilemma, albeit rather obliquely: "We think, too, that under the facts here where the man does testify that the coat was his and raises an issue as to the incriminating evidence therein that he waives any objection as to whether or not the coat was secured by reason of a search warrant." <u>Id.</u> at 291 (citation omitted).[6]

However, in a petition for rehearing, Lester squarely questioned whether waiver should be applied to the constitutional issue, e.g., the legality of the search and seizure. The Court clarified and expanded its original opinion, stating:

---

[6]In this holding, the Court upheld and extended the rule of <u>Burks v. State</u>, 254 S.W.2d 970 (Tenn. 1953), and <u>Hood v. State</u>, 255 S.W. 51 (Tenn. 1923). The rule in those cases was "since the defendant took the stand and admitted his ownership of the seized property, he waived objection to the search warrant." <u>Burks</u>, 254 S.W.2d at 971. <u>Lester</u> upheld the waiver rule even though the defendant denied committing the crime.

It is argued that we "inadvertently overlooked the fact" that the case of Batchelor v. State, which we cited in our original opinion, and the cases therein cited, rely primarily upon admission of guilt rather than naked ownership of the seized property. This argument is in connection with our statement that the petitioner waived any objection he might have to the search warrant when he testified as to his ownership of the coat and thus attempted to say where the buttons had gone, etc. We think that our statement and conclusion in the original opinion were correct, and even under this situation, by the man thus testifying regardless of what we have heretofore said about the search warrant, and even if the coat had been illegally obtained, by thus testifying the man makes the evidence competent.

There are many cases in this jurisdiction and others which deal with the broad principle that if a defendant testifies in substance as to evidence which has been otherwise erroneously admitted, then his testimony clears whatever error there might have been. Thus, these cases clearly show that the rule is not limited to the situation where the defendant takes the stand and admits he committed the crime with which he was charged.

Id. at 292 (citations omitted).

The holding in Lester, and especially the language in the opinion on the petition to rehear, has come to be known as the "Lester Rule"; it has been applied since then with predictable results. See, e.g., Patterson v. State, 475 S.W.2d 201 (Tenn.

11

Crim. App. 1971) (held that defendant waived right to appeal a search and seizure issue because he testified that the drug capsule found in his car was purchased under a doctor's prescription); Berry v. State, 474 S.W.2d 668 (Tenn. Crim. App. 1971) (held that defendant waived right to appeal a search and seizure issue because she testified, despite the fact that she denied all interest in the illegal drugs seized and produced a witness who admitted ownership).

In an effort to temper the harsh effect of the rule, the drafters of the Tennessee Rules of Criminal Procedure promulgated Rule 41(g). As indicated above, Rule 41(g) was designed to prevent the result in Lester. Specifically, it provides that no waiver occurs if a defendant's testimony "gives the evidence an innocent or mitigating cast as to the charge" and "denies the charge." Tenn. R. Crim. P. 41(g).

We must now scrutinize the defendant's testimony to determine whether its essence is such that it prevents waiver. The State argues that Valentine's testimony failed to give "an innocent or mitigating cast" to the evidence against him and asserts that Valentine, on cross-examination, admitted having manufactured marijuana. Thus, claims the State, this testimony constitutes neither a denial of the charges nor an innocent cast.

12

In <u>Harrison v. United States</u>, the United States Supreme Court held that testimony by the defendant given at trial to rebut a confession illegally obtained and illegally admitted into evidence could not be used against the defendant at his retrial. 392 U.S. 219 (1968). The Court reasoned:

> [The defendant] testified only after the Government had illegally introduced into evidence three confessions, all wrongfully obtained, and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby--the fruit of the poisonous tree, to invoke a metaphor. For the "essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all."
>
> In concluding that the [defendant's] prior testimony could be used against him without regard to the confessions that had been introduced in evidence before he testified, the Court of Appeals relied on the fact that the [defendant] had "made a conscious tactical decision to seek acquittal by taking the stand after [his] in-custody statements had been let in . . . ." But that observation is beside the point. The question is not *whether* the [defendant] made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible.

<u>Id.</u> at 222-23 (citation omitted)(footnotes omitted).[7]

The primary concern of the <u>Harrison</u> Court was that the defendant should not be forced to choose between competing constitutional rights because of an illegality perpetrated by the state. This dilemma is as great a concern here as it was to the Advisory Commission when Rule 41(g) was drafted.

Because of the illegal seizure and subsequent improper admission of the seized evidence, Valentine testified in order to rebut the effect of the evidence. As a result, he had to waive his Fifth Amendment and Article 1, Section 9, rights, and he became subject to a cross-examination over which he had no control.

Under <u>Harrison</u>, Valentine's testimony would not be admissible upon retrial unless the State could show that the illegal evidence did not cause him to testify. Thus, to hold that his statements made during testimony, intended only to "meet, destroy or explain" evidence illegally admitted, operates to waive his right to raise the legality of the search and seizure would accord the statements a legitimacy which they do not otherwise have.[8]

_____

[7]The Court further placed the burden squarely on the Government to "show that its illegal action did not induce [the defendant's] testimony." 392 U.S. at 225.

[8]We note that other states have applied <u>Harrison</u> to prevent waiver of review of search and seizure issues when the defendant testifies at trial. <u>See, e.g.</u>, <u>Hay v. Kentucky</u> 432 S.W.2d 641 (Ky.

14

We find that even under the narrow construction of Rule 41(g) urged by the State, Valentine's testimony gave the evidence presented an "innocent or mitigating cast." The State argues that Valentine admitted to "manufacturing" marijuana, the crime with which he was charged. We observe that "to manufacture" marijuana is a legally defined term. Specifically, "to manufacture" for purposes of Tenn. Code Ann. § 39-17-417(a)(4) means:

> the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, ***except that this term does not include the preparation or compounding of a controlled substance by an individual for the individual's own use*** . . . .

Tenn. Code Ann. § 39-17-402(14) (emphasis added).

---

Ct. App. 1968) (right to appeal search and seizure was not waived where defendant took the stand and admitted possession of alcohol in his home, located in a dry area, and explained why he had it there); Sherlock v. Texas, 632 S.W.2d 604 (Tex. Crim. App. 1982) (holding that under Harrison, even incriminating evidence offered by the defendant on direct did not waive right to appeal legality of the search and seizure); Thomas v. Texas, 572 S.W.2d 507, 508 n.2 (Tex. Crim. App. 1976) (no waiver of any objections to the legality of the search where defendant testified that biphetamine capsules found in his car were left there by a friend and that the pills were prescribed for the friend because "[i]t is clear this testimony was offered to meet, destroy, and explain after the fruits of the claimed illegal search were admitted").

In his testimony, Valentine never indicated that he was doing anything besides manufacturing marijuana for his own use. This purpose is explicitly exempted from the definition of "manufacture" and does not constitute an element of the crime with which he was charged. Further, because "manufacture" is a legal term, the sole statement made by Valentine that he was manufacturing marijuana cannot reasonably be understood to encompass the precise legal definition found in the statute. Moreover, Valentine's testimony that he manufactured the marijuana for his own personal use constitutes an implicit denial of the charges of possession with intent to sell or deliver.[9]

Thus, we find that through his testimony Valentine did, in fact, cast the evidence in an innocent light, and he did deny the charge. Hence, his search and seizure issue was preserved on appeal. The result is that he fulfilled the requirements of Rule 41(g), thereby preserving his right to raise the constitutionality of the search and the admission of the seized evidence.

Finding that the trial court committed constitutional error in admitting the illegally obtained evidence and that Valentine did not waive this issue on appeal, we now consider whether this error is harmless beyond a reasonable doubt. Chapman

---

[9]The appellant was charged with possession of marijuana with intent to sell, manufacture, or deliver. Submission of these three charges to the jury prevents us now from determining the precise charge upon which the conviction rests.

16

v. California, 386 U.S. 18, 22-23 (1967); State v. Howell, 868 S.W.2d 238, 252-54 (Tenn. 1993). Under this standard, the question is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Chapman, 386 U.S. at 23 (citation omitted).

In this case, the improperly admitted evidence constituted the State's case against Valentine. We cannot find that this error was harmless beyond a reasonable doubt. In addition, exclusion of the evidence in this case furthers the deterrent purposes of the exclusionary rule because it reinforces the duty that the police and law enforcement officials have to provide proper information to the magistrate in order to obtain a search warrant. Finally, we observe that

> it is not deterrence alone that warrants the exclusion of evidence illegally obtained--it is "the imperative of judicial integrity." The exclusion of [illegally obtained evidence] deprives the Government of nothing to which it has any lawful claim and creates no impediment to legitimate methods of investigating and prosecuting crime. On the contrary, the exclusion of evidence causally linked to the Government's illegal activity no more than restores the situation that would have prevailed if the Government had itself obeyed the law.

Harrison, 392 U.S. at 224 n.10 (citation omitted).

17

For all the foregoing reasons, the convictions are reversed; the indictment is dismissed.


_____
ADOLPHO A. BIRCH, JR., Justice


CONCUR:

Anderson, C.J.
Drowota, Reid, White, JJ.