IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MAY 1999 SESSION

FILED

November 10, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

WILLIAM J. LOGAN,⟩
⟩
    Appellant,⟩    C.C.A. No. 03C01-9808-CR-00287
⟩
v.⟩    Hawkins County
⟩
STATE OF TENNESSEE,⟩    Honorable Ben K. Wexler, Judge
⟩
    Appellee.⟩    (Post-Conviction)

FOR THE APPELLANT:

GREG W. EICHELMAN
District Public Defender

R. RUSSELL MATTOCKS
Assistant Public Defender
1609 College Park Drive, Box 11
Morristown, TN  37813

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

TODD R. KELLEY
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

C. BERKELEY BELL, JR.
District Attorney General
109 South Main Street, Suite 501
Greeneville, TN  37743

JOHN DOUGLAS GODBEE
Assistant District Attorney General
100 East Main Street, Suite 201
Rogersville, TN  37857

OPINION FILED: _____

AFFIRMED

ALAN E. GLENN, JUDGE

# **O P I N I O N**

The petitioner, William J. Logan, appeals the dismissal of his petition for post-conviction relief by the Hawkins County Criminal Court. As grounds for relief, the petitioner claims several instances of alleged ineffective assistance of counsel and the alleged failure of the trial judge to state findings of fact and conclusions of law. Based upon our review of the record and of applicable law, we affirm the order of the trial court dismissing the petition.

Although the petitioner, in his *pro se* petition for post-conviction relief, set out a number of grounds which he alleged entitled him to post-conviction relief, his appellate counsel presented four issues for review.[1]

> 1. Trial counsel was ineffective in failing to object to the introduction of certain evidence which was obtained as the result of an illegal search and seizure.
>
> 2. Trial counsel was ineffective in failing to object, upon the request of the petitioner, to the introduction during the trial of a videotape made during the execution of a search warrant at the petitioner's residence.
>
> 3. Trial counsel was ineffective in failing to timely challenge whether the search warrant could be based upon certain information allegedly received from a confidential informant.
>
> 4. The trial court failed to state findings of fact and conclusions of law.

Appellate counsel for the petitioner states in his brief that the petitioner is now pursuing only these four issues, and not the additional six issues set out in his petition for post-conviction relief. Accordingly, these additional claims are waived. Tenn. R. Ct. Crim. App. 10(b).

## **FACTS**

The process resulting in the prosecution of the petitioner began when Detective Dan Quillen of the Kingsport Police Department went before a General Sessions judge in Hawkins County[2] and obtained a search warrant which stated the following:

STATE OF TENNESSEE, HAWKINS COUNTY AFFIDAVIT AND SEARCH WARRANT

I Detective David P. Quillen, make oath that I am a Police

---

[1]The petitioner's conviction was affirmed in State v. Logan, 973 S.W.2d 279 (Tenn. Crim. App.), perm. app. dismissed (Tenn. 1998).

[2]The city of Kingsport is situated mostly in Sullivan County, but a portion of its city limits is in Hawkins County.

Officer duly appointed and qualified as such in the state and county aforesaid; that on the 8 day of April, pursuant to a criminal investigation I received information that the crime of cocaine possession and cocaine selling is or has been committed in Hawkins County, Tennessee, and that William James Logan is now in possession or control of fruits or instruments of the crime set forth above; said property or residence being described as follows: 941 Old Stage Road, Church Hill, Tn. Westbound on Main Street make a right turn onto Carolyn Ave. and the next right onto Old Stage Road. Travel approximately 3/10 of a mile on Old Stage Road. The residence to be searched will be on the left. It will be a single story structure with a red tin roof, light color siding with white trim and a front porch. There is a storage building in the back yard. Search to include Mr. Logan, vehicles and curtilage located in Hawkins County Tennessee.

I further make oath that my reasons for believing said William James Logan is unlawfully keeping or controlling said cocaine, drug paraphernalia is set forth in the following affidavit: Within the past 72 hours, a reliable confidential informant has been at the above described premises and told the affiant that the individual named is engaged in dealing in narcotics. The confidential informant is familiar with cocaine, how it is processed, packaged for resale and how it is administered for personal use.

Within the past 72 hours, the confidential informant told the affiant that same observed cocaine being sold and stored therein. In the past the confidential informant has given the affiant information on at least one occasion that led to the seizure of cocaine. The confidential informant has corroborated other reliable informant's information and has never given information that I found to be untrue.

Wherefore, as such officer acting in performance of my duty in the premises I pray that the Court issue a warrant authorizing the search of the person of the said William James Logan and the premises herein described for said cocaine, drug paraphernalia described above, and that such search be made either by day or night.

<u>David P. Quillen</u>
Affiant


Following the presentation of the affidavit, the Hawkins County General Sessions

Court issued the following search warrant:

SEARCH WARRANT
STATE OF TENNESSEE, HAWKINS COUNTY

To the Sheriff or any lawful officer of said county;

Proof having been made before me and reduced to writing and sworn to by Detective David P. Quillen whose affidavit is attached hereto and is hereby referred to for its contents, and said contents incorporated herein, that there is probable cause to believe that the crime of cocaine possession, has or is being committed in Hawkins County, Tennessee, and that said William James Logan now has in his possession or under his control the said cocaine, drug paraphernalia, that said premises or property is located in Hawkins County, Tennessee, and are hereby referred to by specific reference to the attached affidavit for this warrant.

From the proof it is adjudged that the offense of cocaine possession or or [sic] has been committed by the said

3

defendant, William James Logan, on the said premises hereinbefore described, and you are hereby commanded in the name of the State of Tennessee to make immediate search by day or night, of the person of said defendant, and the house or buildings on said premises, and should you find the same or any part of the said cocaine, drug paraphernalia, bring the same before the Court of General Sessions and make a due return of this writ.

Given under my hand and seal this 10 day of April, 1996.

_____/s/_____
Judge of the Court of General Sessions

The return on the search warrant was made by Detective Quillen on April 12, 1996, and states that the following personal property was seized: "Several baggies cocaine," "Approx. 2,824.00 in cash," "shoe - pager," and "Prescription bottle - I off white pill."

According to the Kingsport Police Department Vice and Narcotics Division raid worksheet, the raid coordinator for the execution of the search warrant was D. P. Quillen, the raid supervisor was Sergeant Wayne Anderson, and the authorization for the raid was granted by "MEA/303." This worksheet further sets out that the security team consisted of a Hawkins County or Church Hill officer and Tim Crawford, that the search team consisted of Sergeant Wayne Anderson and D. P. Quillen, and the arrest team consisted of Tim Crawford and a Hawkins County or Church Hill officer. The evidence custodian and videographer was D. Street.

**EVIDENTIARY HEARING**

On August 5, 1998, the trial court held a hearing on the petitioner's petition for post-conviction relief. Detective David Quillen, the first witness testified that he had been employed for seven years by the Kingsport Police Department. Based upon information which he had obtained from an informant within the city limits of Kingsport, he sought and obtained the search warrant for the residence of the petitioner. Detective Quillen testified that he was a duly appointed and qualified officer of Hawkins County by virtue of the fact that Kingsport extends into Hawkins County and his authority extended one mile into Hawkins County. However, his authority did not extend to the area in which the petitioner's residence was located, approximately six miles from the Hawkins-Sullivan County line.

Counsel, whose performance is now being questioned by the petitioner, also testified at the hearing. He testified that, in addition to Detective Quillen, others present for the execution of the search warrant at the petitioner's residence were Dustin Dean, of the

4

Church Hill Police Department and Corporal Phelps, of the Mount Carmel Police Department.

## DISCUSSION

We will review seriatim the issues presented in the petitioner's appellate brief, analyzing each both as to the efficacy of the claim and then as to whether the alleged inaction of trial counsel as to that particular claim is affected by the holding of our Supreme Court in Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975).

1. Alleged ineffective assistance of counsel as the result of the failure of trial counsel to challenge the search warrant because it was obtained by a Kingsport police officer for a residence in Hawkins County more than one mile from the portion of Kingsport within Hawkins County.

Regarding the petitioner's allegations as to his trial counsel's incompetency in not challenging the search warrant for the petitioner's residence, we view the issue as follows: To what extent, if any, is the efficacy of a search warrant affected when the affiant is a law enforcement officer with jurisdiction over a portion of a county, although not that portion in which the location to be search is located, the search warrant is directed not to the affiant, but to the sheriff or any law enforcement officer of the county where the search is to take place, and the affiant is accompanied, during the execution of the search warrant, by officers with jurisdiction in that county, one of whom is an officer in the city in which the place to be searched is located.

Regarding this claim, the trial court found, in dismissing it:

> The search warrant, the search warrant was obtained by officers of Sullivan County, or Kingsport, and which a Hawkins County Session Judge granted the warrant. It appears from Mr. Winstead's testimony that two local police officers of Hawkins County went and served this warrant, or was at least present when the warrant was served. And I can't really, I haven't been able to find anything that was wrong with this search warrant. If there is, I've not been shown it here this morning.

Rule 41, Tennessee Rules of Criminal Procedure, provides, in pertinent part, as follows:

> **Search and Seizure.**
>
> (a) Authority to Issue Warrant. - A search warrant authorized by this rule may be issued by a magistrate with jurisdiction within the county wherein the property sought is located, upon request of the district attorney general or assistant or criminal investigator, or any other law enforcement officer.
> . . . .

5

> (c)  Issuance; Contents; Copies; Failure to Comply. . . .
> The search warrant shall be directed to and served by
> the sheriff or any deputy sheriff of the county wherein
> issued, any constable, or any other peace officer with
> authority in the county.

We note that Detective Quillen was a duly authorized law enforcement officer in Sullivan County, where Kingsport is located, as well as in a portion of Hawkins County, although not the portion where the petitioner's residence was located.  Further, we note that the search warrant itself is directed not to the affiant, Detective Quillen, but "[t]o the Sheriff or any lawful officer of said county."

In State v. Smith, 868 S.W.2d 561, 572 (Tenn. 1993), reh'g denied, 1994 WL 3381, cert. denied, 513 U.S. 960, 115 S.Ct. 417, 130 L.Ed.2d 333 (1994), our Supreme Court considered a similar complaint to that of the petitioner herein regarding a search warrant in that it had been obtained by a police officer with jurisdiction in a contiguous county:

> The Defendant's concluding argument is that the search warrant was invalidated because Detective Pridemore of the Metropolitan Nashville Police Department had no authority to execute the warrant in Robertson County. T.R.Cr.P. 41(c) requires that a search warrant be "directed to and served by the sheriff or any deputy sheriff of the county wherein issued, any constable, or any other peace officer with authority in the county." When the warrant was obtained and executed, Detective Pridemore was accompanied by Deputy Groves of the Robertson County Sheriff's Department. The warrant itself is addressed "to any Peace Officer within or of said County [Robertson County]." The Judicial Commissioner certified that the warrant was delivered for execution to Pridemore; however, Groves executed the return on the warrant. Pridemore's participation in procuring the warrant and executing it does not invalidate the warrant. See State v. Pigford, 572 S.W.2d 921 (Tenn. 1978) (issuance of warrant to federal officer and his participation in its execution did not invalidate warrant so long as it met all statutory requirements); State v. Robinson, 622 S.W.2d 62, 75 (Tenn. Crim. App. 1981). We are of the opinion that the trial court correctly held that the search warrant was validly executed.

Smith, 868 S.W.2d at 572-73.

In the instant matter, as in Smith, although the search warrant was issued to an officer from a contiguous jurisdiction, he was accompanied for its execution by officers from the county where the property subject to the search warrant was executed.  Other Tennessee decisions also have considered whether the validity of a search warrant is affected by the fact that it was not obtained by a police officer from that jurisdiction.  In State v. Pigford, 572 S.W.2d 921 (Tenn. 1978), our Supreme Court considered the situation in which an agent of the Federal Drug Enforcement Administration appeared before a Shelby County General Sessions judge and executed a search warrant affidavit

6

to obtain a warrant for the search of the defendant's premises. The warrant was addressed "[t]o the Sheriff, Any Constable or Any Peace Officer of [Shelby] County." Pigford, 572 S.W.2d at 921. When obtaining the search warrant, the federal officer was accompanied by a Shelby County deputy sheriff, and he was accompanied by the same Shelby County deputy sheriff and two others when the search warrant was executed. The deputy sheriff who was present when the warrant was obtained made the return on the warrant. In upholding the search warrant, the Court said:

> All such statutory requirements were met by the warrant in this case and by its execution. It was directed "to the sheriff, any constable, or any peace officer" of Shelby County and commanded them to execute a search of respondent's premises. It did not direct or command Griggs [the DEA agent] to perform the search nor did Griggs alone execute the warrant. Deputy Hamby was present when application was made for the warrant; and he and two other county deputies, assisted by Griggs, searched the premises. Griggs' participation in the search in no way invalidates the warrant or the search so long as the provisions of § 40-508 are complied with.

Pigford, 572 S.W.2d at 922.

Other jurisdictions have considered complaints similar to those raised by the petitioner.

In United States v. Freeman, 897 F.2d 346 (8th Cir. 1990), a special agent for the Missouri Department of Revenue had obtained a search warrant for a salvage yard in Missouri. Since, under Missouri law, only a "peace officer or prosecuting attorney" could apply for the issuance of a search warrant, the owner of the salvage yard moved to quash the search, arguing correctly that the revenue employee was not authorized to seek a search warrant. The court noted the holding as to a similar question in the seminal case of United States v. Burke, 517 F.2d 377, 386-87 (2d Cir. 1975), wherein Judge Friendly wrote, regarding an attack upon a search warrant:

> . . . . violations of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

Freeman, 897 F.2d at 349.

In Freeman, the court upheld the warrant, ruling that:

> The instant case is a close case. The circumstances relating to Ley's violation of the procedures for application and execution of the warrant are more egregious than in any of the cases previously cited because here Ley did not consult with anyone in authority before applying for the warrant. Further,

7

> evidence in the record supports a conclusion that Ley himself controlled and supervised the search and made the return, although joined in that search by qualified peace officers.
>
> Nevertheless, we conclude that these concerns were minimally overcome here. As noted, the magistrate found that Ley, although unauthorized to apply for and execute a search warrant, carried out the application and execution in good faith, believing that he possessed authority to do so. This finding is not clearly erroneous.
>
> Moreover, the record as a whole demonstrates that no constitutional violation occurred: the affidavit supporting the search warrant provided probable cause to search and the search warrant described with particularity the place to be searched and the items to be seized. Additionally, Freeman suffered no prejudice in the sense that the search might not have occurred or been so abrasive had the procedural requirements been followed. Accordingly, we cannot say the district court erred in denying the suppression motion.

Freeman, 897 F.2d at 350 (citations omitted).

We note that the petitioner claims that Detective Quillen misrepresented his authority, but there is no allegation that the search would not have occurred or would have been conducted differently had he not been involved.

Courts of other states have upheld warrants in spite of complaints similar to that of this petitioner.  In Keen v. State, 626 S.W.2d 309 (Tex. Crim. App. 1981), an Austin, Texas, police officer had obtained a search warrant for a residence which, although located in the same county as Austin, was not within its city limits.  Thus, under Texas law, the officer did not have jurisdiction where the residence was located.  Noting that the Austin police officer was assisted in execution of the search warrant by other officers with county-wide jurisdiction, the court upheld the validity of the search warrant.  See also Dickey v. State, 815 S.W.2d 832 (Tex. App.-Eastland 1991) (citing Keen, search warrant valid though issued to Houston police officer for search in adjacent Galveston County when the officer was accompanied by a Galveston police officer whose name was also listed on the return); Chavez v. State, 970 S.W.2d 679 (Tex. App.-Eastland 1998).

Likewise, in People v. Martinez, 898 P.2d 28 (Colo. 1995), Denver police officers had executed a search warrant at a certain address in what they believed to be the City of Denver, determining later, however, that the location was actually in the City of Englewood, Arapahoe County, Colorado, and was approximately one block from the Denver city limits. Arapahoe County officers were unaware until later that the warrant had been obtained or executed.  The court upheld the search nonetheless, finding that "there is no evidence that the house would not have been searched, or that the search would have been carried out

8

in a substantially different manner if local officers were present." Martinez, 898 P.2d at 33.

Based upon these authorities, we believe that the search warrant was not subject to being suppressed simply because it was obtained by Detective Quillen, who was not an officer with jurisdiction as to the portion of Hawkins County where petitioner's house was located. Rule 41(a), Tenn. R. Crim. P., allows a search warrant to be requested by "the district attorney general or assistant or criminal investigator, or any other law-enforcement officer." This language does not require that the request for the search warrant must be made by a law enforcement officer of the county where the search is to be conducted, only that the person be a law enforcement officer. In fact, in both State v. Pigford, 572 S.W.2d 921 (Tenn. 1978) (wherein DEA officer requested the warrant), and State v. Smith, 868 S.W.2d 561 (Tenn. 1993) (Nashville police officer requested the search warrant in Robertson County), search warrants were sought by law enforcement officers not having jurisdiction in the county wherein the warrants were issued. Although in both of those cases officers from the issuing counties were present when the warrants were issued, we do not consider this to be the determinative factor in either of the cases. Rule 41(c), Tenn. R. Crim. P., specifically provides that a search warrant is to be "directed to and served by the sheriff or any deputy sheriff of the county wherein issued, any constable, or any other peace officer with authority in the county." Although Detective Quillen had authority in Hawkins County, it was limited to a small area and did not include the location of the petitioner's residence. However, the trial court found that two Hawkins County law enforcement officers either served the search warrant or were present when it was served.[3] Thus, pursuant to the holdings in Pigford and Smith, we concur with the trial court that the search warrant was not invalid because of the involvement of Detective Quillen.[4] This being the case, trial counsel was not ineffective for not contesting the search warrant on this basis.

2. Trial counsel was ineffective for failing to object to the introduction of a videotape at the trial.

During the evidentiary hearing in this matter, Detective Quillen testified regarding this videotape:

---

[3]Detective Quillen testified during the evidentiary hearing that the search team would not have gone to the petitioner's house or executed the search warrant if the Church Hill officer had not been present.

[4]Further, as we have previously noted, there is no allegation, nor any proof, suggesting that the search warrant would not have been obtained or the search conducted differently had the search warrant been obtained by a Hawkins County police officer.

9

Q. The video that has been referred to, this was as I understand it, introduced into evidence, is merely a video tape of the inside of the house?

A. Yes, sir.

Regarding this same matter, the petitioner testified during the evidentiary hearing:

Q. The video tape was introduced at your trial.

A. Yes.

Q. Would you describe for the Court what the video tape showed?

A. Mr. Winstead failed to suppress this evidence in the video tape. The video tape showed my watch, rings in the window sill. They zoomed in on them. Jewelry, my living room outfit, furniture, appliances, to show how I lived. I guess they was showing that I lived pretty decent to be with the income that I was getting; but everything in my house was paid for by payments. I don't think he should have used that evidence to prove intent. I was charged with Possession with the Intent to Sale [sic] .11 gram of cocaine. And the video tape didn't show intent, it didn't show transactions; it didn't show any crime whatsoever. It just showed the condition of my house. They even filmed the tires on my car to show how good the car looked, and you know, it inflamed the jury; and I think it created an unfair outcome of my trial.[5]

Q. Did you ask Mr. Winstead, at the time of the trial, to object to the introduction of this evidence?

A. Mr. Winstead never showed me the tape until I got to trial. And I asked him, I said, what's on that tape? He said, don't worry about it; I already saw it. It ain't going to hurt you. And I didn't know what was on it until he put it on there. I didn't even know they did it. They didn't do it while I was there. I got arrested and was gone. And they must have come back and video taped it.

Q. If Mr. Winstead had discussed this evidence with you, prior to the trial, would you have asked for him to object?

A. Yes, sir.

The following additional comments were made regarding this videotape:

THE COURT: Actually, this video, was it just a video of the alleged crime scene?

MR. MATTOCKS: Yes, sir. The Petitioner's apartment, his car, his apartment.

PETITIONER LOGAN: Nothing showed the crime whatsoever.

. . . .

[5]The videotape was not made an exhibit to the hearing on the petition for post-conviction relief. However, for the purposes of this appeal, we will presume that the petitioner accurately described its contents.

Q (by General Godbee): Okay, and they were showing everything that was there, weren't they?

A (by petitioner): No, not any money or drugs or anything like that. They was just showing appliances, furniture, that's all.

The petitioner's trial counsel also testified regarding the videotape:

Q. And the video tape, and do you remember what if anything was video taped?

A. Yes, I've reviewed not only the preliminary hearing, but the transcript. And my independent recollection of it was that the video tape - they took, when they brought the dog into - he found - he hit on three items in the house, the Reebok tennis shoes that had $2,000.00 in it. There was [a] vase sitting on the table, as I remember was $94.00, and there was money found in the third place in the house, about $300.00. The total was $2835.00, which was seized. The officers took eight or nine photographs of that, including the commode, where they alleged that Mr. Logan was sitting at the time. That's where the 16 baggies were found. But you recall when this evidence was sent . . . .

. . . .

Q (by Mr. Mattocks): With regard to the video tape, did you file a motion to suppress the video tape?

A. I did not.

Q. Did you show the video tape or discuss the video tape with Mr. Logan prior to trial?

A. I obtained copies of the photographs, the nine photographs, and yes, I told him there was a video tape. It was simply showing the location of everything in the house, particularly the three places that the money was found in the house and the location of the bathroom and commode where that he was sitting when the officers came into the house when they took him off the commode.

Q. Did Mr. Logan ask for you to object to the video tape?

A. No, sir, he did not. We discussed it. He's correct. I told him I did not see that the video tape was going to add or detract from anything as far as our defense was. That it was possessed no intent to sale. He had made a statement to the officers that he knew that it was cocaine, and that it was his cocaine, and that he was addicted; and that it was only for his use. That's all the statement that was made to my understanding from him and the officers that it was made while he was in the house, without an interrogation being conducted.

Regarding the petitioner's complaints about the showing of the videotape, the trial court ruled:

The video tape, Mr. Winstead said he had looked at the tape, couldn't find anything in there that would help or hurt him, and of course, the State has a right to show pictures of the crime

scene. I feel sure that the trial Judge would have allowed that, unless there was something in there that was more prejudicial than showing a car with new tires on it, or a new refrigerator, or a watch laying in the window. That allegation is dismissed.

Pursuant to the holding in Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), trial counsel is not ineffective when counsel does not object to the introduction during trial of certain evidence, simply because the client insists that such an objection be made, but there is no legal basis for such an objection.

Unless a showing can be made that trial counsel did not satisfy the Baxter standard, in that counsel's services were not within the range expected of attorneys in criminal matters and that, but for the deficient performance, the trial results would have been different, post-conviction relief for ineffective assistance of counsel is not available. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In this case, both this Court, as well as the trial court, were handicapped in assessing the petitioner's claims regarding the videotape, since the tape apparently has been lost. However, based upon the descriptions in the record of its contents, it appears to be somewhere between innocuous and immaterial to the proof. This being the case, counsel was not ineffective in not objecting to the tape being introduced into evidence. For these reasons, we cannot say that the trial court was incorrect in overruling the complaint regarding the videotape.

3. Alleged ineffective assistance of counsel in that trial counsel failed to challenge in a timely manner the information from an unidentified confidential informant which was used as a basis of the search warrant.

Regarding the probable cause for the issuance of the search warrant, the affidavit for the search of the petitioner's residence stated:

> Within the past 72 hours, a reliable informant has been at the above described premises and told the affiant that the individual named is engaged in dealing in narcotics. The confidential informant is familiar with cocaine, how it is processed, packaged for resale and how it is administered for personal use.

> Within the past 72 hours, the confidential informant told the affiant that same observed cocaine being sold and stored therein. In the past the confidential informant has given the affiant information on at least one occasion that led to the seizure of cocaine. The confidential informant has corroborated otherwise reliable informant's information and has never given information that I found to be untrue.

The petitioner argues that deficiencies in the search warrant affidavit regarding the confidential informant and information received from that person should have been challenged by trial counsel with a motion to suppress the search warrant. The defense argues that such a motion would have resulted in a hearing during which the prosecution would have been forced to produce the confidential informant as a witness.

Regarding the petitioner's allegations that this information was insufficient for the issuance of a search warrant, the trial court ruled:

> The confidential informant, it says that he didn't give enough information on the warrant. It looked like he did. I couldn't understand what we are talking about, if he didn't give enough information. I believe that the information was that he was present in Mr. Logan's residence some few hours before this search warrant was sought, and observed a sale. That looks to me like pretty good confidential information. I feel sort of like Mr. Winstead, if I had been representing this man, I don't think I would have wanted that fellow to testify, regardless of who he was. Now whether he was reliable, I guess reliable information, I believe it says in that affidavit that he had given reliable information once before. And to make information reliable, maybe you have to give it several time's [sic]; but you've got to start somewhere. And if it's the second situation, and the first situation worked out and was reliable, and apparently it was reliable in this case. So I don't see anything wrong with the search warrant. That allegation is dismissed.

Whether the credibility of an informant has been sufficiently established has spawned much litigation. As noted in Moylan, "Hearsay and Probable Cause: An Aguilar and Spinelli Primer," 25 Mercer L. Rev. 741, 765 (1974):

> The character of the informant as a truth-speaker could hypothetically be established in a number of ways. A lie detector test or truth serum would certainly have a bearing on the question. If the informant was once awarded a Boy Scout medal for trustworthiness or if he happened to be a prince of the church, those facts would be unquestionably relevant on the issue. Testimonials from friends, neighbors, and business associates as to his reputation for "truth and veracity" would be highly relevant. As a practical matter, however, "stool pigeons" are neither Boy Scouts, princes of the church, nor recipients of testimonials. With the typical confidential police informant, we have recourse only to his "track record" of past performances.

In State v. Valentine, 911 S.W.2d 328 (Tenn. 1995), our Supreme Court set out the principles which we must apply in testing the search warrant affidavit:

> In order for a search warrant to meet constitutional requirements under Article I, Section 7, of the Tennessee Constitution, the warrant must comply with the two-pronged standard voiced in Aguilar v. Texas and Spinelli v. United States. State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989). The two prongs of the Aguilar-Spinelli test are usually referred to as the "basis of knowledge" prong and the "veracity" prong.

Valentine, 911 S.W.2d at 330 (footnotes omitted).

13

Over the years, our courts have considered numerous variations of information from confidential informants which was the basis for a search warrant . In State v. Stevens, 989 S.W.2d 290, 292 (Tenn. 1999), law enforcement officers, utilizing a person whom they felt was a "citizen informant," set out in the search warrant affidavit that the informant was "believed to be credible and liable [sic]." The court, finding that the informant was not a "citizen-informant," as the officers believed, upheld the search warrant because of verification by the officers of the information:

> With regard to the reliability of the informant, the affidavit states only that the "citizen" was "believed to be credible and [re]liable." Although this assertion alone is insufficient to establish the veracity of the informant, the statements indicating that a positive field test was performed on the "finished product" in the informant's possession sufficiently demonstrated the reliability of the information.

Stevens, 989 S.W.2d at 295 (citations omitted).

Likewise, in State v. Henning, 975 S.W.2d 290 (Tenn. 1998), the Court considered a search warrant affidavit which stated that the informant's "reliability has been established by providing information which has resulted in several arrest[s] in the past." Henning, 975 S.W.2d at 295. In addition, the affidavit stated that investigators had observed at the location to be searched "five transactions of a type believed to be drug sales," that the resident of the dwelling to be searched had two prior arrests for possession of drugs with intent to sell, and that previously a vehicle had been seized from him for "possession of drugs." Id. The court upheld the validity of the search warrant, stating:

> Although there is no specific allegation in the affidavit which, on its face, establishes the credibility of the informant, the independent police corroboration of the informant's tip, explained in the affidavit, is sufficient to establish the informant's credibility.

Henning, 975 S.W.2d at 295.

A warrantless seizure, following an informant's tip, was scrutinized in State v. Bridges, 963 S.W.2d 487 (Tenn. 1997). Finding the information adequate to establish probable cause, the court held:

> In the present case the informant who provided the tip about the defendant's criminal activity had assisted Officer Blackwell on a case approximately eight years earlier in which an arrest and conviction were made on a cocaine charge. Blackwell had known this informant for a number of years and said this informant had "always been very straightforward and very honest and very reliable" with him. These facts minimally satisfy the credibility prong of the Jacumin test.

Bridges, 963 S.W.2d at 491.

However, simply describing the confidential informant as "a reputable and reliable person" was a conclusory allegation which failed to demonstrate to the magistrate either the informant's inherent reliability or the reliability on that particular occasion. State v. Valentine, 911 S.W.2d 328, 329 (Tenn. 1995).

The informant in State v. Transou, 928 S.W.2d 949 (Tenn. Crim. App. 1996), was described as a "reliable informant who has proven reliable in the past and has been on said premises within the past 72 hours and has seen illegal narcotics for resale." Transou, 928 S.W.2d at 957. Citing Valentine, this Court held that this language failed to "establish why the informant was 'reliable' or how the informant had 'proven reliable in the past.'" Id. However, in State v. Hilliard, 906 S.W.2d 466, 468 (Tenn. Crim. App. 1995), the statement in the search warrant affidavit that "[t]he confidential informant has given information in the past which resulted in the arrest and convictions of known drug dealers on several occasions" satisfied the second prong of the Aguilar-Spinelli test. Id. at 468. This Court, in State v. Moon, 841 S.W.2d 336 (Tenn. Crim. App. 1992), ruled that probable cause was not established by the statement that "such informant is a reliable person who has given information against his penal [interest] and in this case has given information that affiant has checked and found to be accurate." Id. at 337. The defendant conceded that the reliability prong of Aguilar-Spinelli had been satisfied by the statement that "[i]nformation received from said informant in the past has resulted in the confiscation of illeg[a]l drugs and two convictions in a court of law." State v. Thomas, 818 S.W.2d 350 (Tenn. Crim. App. 1991).

Certainly, the first prong of the Aguilar-Spinelli test is satisfied by the statements in the affidavit in this case that the confidential informant had been within the premises to be searched within the seventy-two hours prior to the search warrant application being submitted to the issuing magistrate, and the recitation of the informant's familiarity with cocaine. Thus, the "basis of knowledge prong" is met. See Moon, 841 S.W.2d at 339.

As to the "veracity prong," we find this is supported by the statements in the affidavit. It is said that the informant has "given the affiant information on at least one occasion that led to the seizure of cocaine," that the "informant has corroborated otherwise reliable informant's information and has never given information that I found to be untrue." We believe that this language minimally establishes the credibility of the informant and is most

15

akin to that examined in Bridges, 963 S.W.2d at 491 (the informant had assisted the affiant on a case approximately eight years earlier in which an arrest and conviction were made, the officer had known the informant for a number of years, and the informant had always been very straightforward, honest and reliable) and Hilliard, 906 S.W.2d at 468 (past information from the informant had "resulted in the arrest and convictions of known drug dealers"). Additionally, we note that the affidavit states that the informant had corroborated "otherwise reliable informant's information" and had never given information "found to be untrue." Regarding such assertions, it has been stated that:

> In a case which might otherwise be somewhat doubtful, it may be significant that the police officer asserts that his informant has never given him information which proved to be incorrect.

2 Wayne R. LaFave, Search and Seizure, § 3.3(b) (3d ed. 1996) (footnote omitted).

In this same regard, as reported by Professor LaFave:

> If the furnishing of good information in the past contributes to a belief in an informant's credibility, the furnishing of bad information in the past would certainly derogate therefrom. The policeman who works with an informant knows of his full batting average, not just of his successes. If a magistrate is furnished, selectively, with half-truths, he is intellectually crippled in terms of making the informed judgment contemplated by the fourth amendment. It is not being overly cynical to suggest that in some instances, the sparsity of information about an informant's credibility is prompted not by fear of compromising his identity but by fear that the policeman doesn't really have a "substantial basis" for trusting his informant. In such cases, the magistrate should not be asked to rely upon that which the policeman himself should not really rely upon.

Id. (citing Moylan, "Hearsay and Probable Cause: An Aguilar and Spinelli Primer," 25 Mercer L. Rev. 741 (1974), at 759).

In his brief, the petitioner cites this Court's opinion in State v. Stephen Udzinski, Jr., No. 01C01-9212-CC-00380, 1993 WL 473308 (Tenn. Crim. App., Nashville, Nov. 18, 1993) for the proposition that a showing of probable cause in the affidavit is weakened by the fact that it does not set out that previous information from the informant has resulted in arrests. However, while this argument is correct, it is also true that a consideration in whether credibility has been established in this matter is the fact that the informant previously gave information resulting in the seizure of cocaine and, in this matter, he told officers that the petitioner was storing and selling cocaine in this residence:

> When the nature of the prior information is omitted, the allegations become even more circumspect. Easily accessible and verifiable public information--i.e., who won the game, what was yesterday's weather, and who drives a certain car-- impute no credibility to the informant. Only previous

16

> information that imputes credibility to the informant once it is found to be accurate provides the necessary basis for concluding that an informant is reliable, i.e., the drugs are at this location or the gun is in the alley. Thus an affidavit which recited that an informant had previously given law-enforcement information that led to the discovery of a murder weapon or a shipment of cocaine would sufficiently establish the informant's reliability. It would allow the magistrate to consider that, on prior occasions, the person upon whom the police were currently relying, had given the police information not subject to public knowledge that proved to be correct.

Udzinski, 1993 WL 473308, at *3.

In addition, as to whether previous information from the informant must have resulted in one or more convictions, Professor LaFave states:

> Perhaps the best illustration of this point [that previous information from the informant need not have resulted in convictions] is to be found in those cases in which the critical allegation is that the informant's prior information has led to the discovery of evidence of criminal activity. Courts have consistently held that an informant's track record is sufficiently established by a showing (i) that on one or more prior occasions the informant indicated that a certain object, usually narcotics but sometimes such other items as stolen property, counterfeit money, or even the body of a homicide victim, are concealed at a certain place, and (ii) that this information was verified as true by a search which uncovered the specified items at the place indicated. This is a sound result, for the fact that "evidence was turned up which the informant indicated would be turned up" bears very directly upon the informant's credibility.

LaFave, supra, § 3.3(b) (footnotes omitted).

Thus, based upon these authorities, we hold that probable cause to search the defendant's residence was established by the search warrant.

In addition, the defendant has asserted that his trial counsel should have filed a motion to suppress the search warrant so that the identity of the confidential informant could be discovered. Both the record in this matter and the opinion of the court regarding the direct appeal of the petitioner's conviction make it clear that there was no basis for disclosure of the identity of the confidential informant. State v. Vanderford, 980 S.W.2d 390, 396 (Tenn. Crim. App. 1997), perm. app. denied (Tenn. 1998) (defendant not entitled to discover informant's identity solely to attack the search warrant). This being the case, ineffective assistance of counsel did not occur when trial counsel for the petitioner did not attempt to suppress the search warrant.

4. The trial court failed to state findings of fact and

17

conclusions of law.

As the petitioner correctly argues, Tennessee Supreme Court Rule 28, § 6(B)(4)(c) states that the trial court shall, upon dismissal of a petition for post-conviction relief, enter an order setting out its findings of fact and conclusions of law.  Although a written order was not entered in this case, the record on appeal, together with the transcript of the trial court's oral ruling, is sufficient for us to consider each of the issues presented.

## CONCLUSION

Based upon the authorities and the reasoning set out herein, we affirm the order of the trial court dismissing the petition for post-conviction relief.

_____
ALAN E.  GLENN, JUDGE

CONCUR:


_____
JAMES CURWOOD WITT, JR., JUDGE


_____
JOHN EVERETT WILLIAMS, JUDGE